**MERCANTILE NATIONAL BANK AT DALLAS, Appellant,**

v.

**Roberta Ray WILSON, Appellee.**

**No. 14901.**

Court of Civil Appeals of Texas. Dallas.

Feb. 18, 1955.

Rehearing Denied May 27, 1955.

Clark, Coon, Holt & Reed, Harold Hoffman, Dallas, for appellant.

Turner, Rodgers, Winn, Scurlock & Terry, Chas. D. Turner, Dallas, for appellee.

CRAMER, Justice.

Appellant's statement of this case, which we adopt, is as follows:

"This is a suit upon a promissory note payable to the Mercantile National Bank at Dallas, made by George O. Wilson, deceased. The plaintiff sued Roberta Ray Wilson, individually and as sole legatee and independent executrix under the will. The defendant admitted that the estate owed the note, and admitted the amount due thereon, and there is no controversy between the parties as to this portion of the suit. The suit against Roberta Ray Wilson individually and as sole legatee was based upon the allegation that the defendant had received certain assets of the estate which should have been subjected to the payment of the debts of the deceased. The plaintiff sought to enforce its statutory lien to the extent that such assets remained in the hands of Roberta Ray Wilson, individually and as sole legatee, and to recover personal judgment against her to the extent that she had disposed of such assets prior to the time of trial. The defendant denied that such assets belonged to the estate, but insisted that they constituted the separate property of Roberta Ray Wilson and were not subject to the debts of her husband.

"The assets in question are all related to a trust created by the defendant prior to her marriage, of which the defendant was the sole beneficiary. The plaintiff contended that the income from the trust estate accruing during the marriage constituted community property, and that assets purchased with such income constituted community property. The plaintiff contended that the equitable interest of the community in such trust properties was subject to the payment of community debts at the death of George O. Wilson, and that, the trust having been dissolved and its assets distributed to defendant shortly after the death of George O. Wilson, such trust assets passed to defendant subject to plaintiff's claim. The properties sought to be reached by the plaintiff are as follows:

"(1) Corporate stocks and bonds held by the trustee at the death of George O. Wilson.

"(2) Bank account in the name of defendant on deposit at the death of George O. Wilson, derived from a distribution made by the trustee.

"(3) Right of reimbursement held by the community estate against the separate estate of defendant, derived from a distribution made by the trustee during the life of George O. Wilson, which distribution was used by defendant to discharge a lien upon her separate property.

"(4) Income from such properties after the death of George O. Wilson.

"The facts were substantially undisputed, with the exception of certain evidence which was admitted over plaintiff's objection. The court rendered judgment for plaintiff against defendant as independent

executrix, for the agreed amount due on the note, but denied all other relief for which plaintiff had prayed. At plaintiff's request the court filed findings of fact and conclusions of law, but declined to file further additional and amended findings of fact."

Appellant briefs ten points of error in substance: Error in (1) denying foreclosure and a personal judgment against appellee Mrs. Wilson individually and as sole legatee to the extent that the undisputed evidence showed the properties in question to have been purchased in whole or in part out of trust income which was community property; (2) denying foreclosure and a personal judgment against appellee individually and as sole legatee to the extent that appellee failed to sustain her burden of proof by tracing all properties in question to properties owned by appellee before marriage, or mutations thereof; (3) denying foreclosure and a personal judgment against appellee individually and as sole legatee to the extent that the original corpus of the trust had become so commingled with the trust income, which was personal property, that the entire trust res became community property; (4) denying relief to appellant with respect to properties as to which there is no competent evidence to overcome the presumption in favor of the community estate; (5) denying relief to appellant with respect to properties as to which the evidence was insufficient to overcome the presumption in favor of the community estate; (6 and 7) making its finding No. 9 to the effect that certain Czechoslovak bonds were exchanged for Republic of Chile bonds; that the court erred in admitting evidence to such effect for the reason that such evidence was admitted over appellant's objection that it was hearsay and there is no other evidence to support such finding that certain Japanese bonds were exchanged for certain other bonds; (8) certain Finland bonds for certain other bonds which were in turn refunded in other bonds which were later redeemed for the reason that such evidence was hearsay and there is no other evidence to support such finding; (9) in making its finding of fact No. 32 to the effect that ap-

pellant in its trust department used the identical procedure in handling its trust accounts as was used by the substitute trustee because such evidence was admitted over appellant's objection that it was irrelevant and immaterial; (10) in making its finding No. 7 to the effect that the estate of George O. Wilson was insolvent since there is no evidence or the evidence is insufficient to support such finding, and further that solvency or insolvency of the estate is not material until execution is attempted to be levied on assets of the estate or an order of sale is issued.

Appellant's points are countered as follows: (1) That undistributed income of the trust is not community property; (2) appellant Bank is not entitled to a personal judgment nor to foreclosure of a lien on her personal property for debt against her deceased husband; (3) appellee has by competent evidence traced all pertinent mutations of the trust estate and has adequately shown no commingling of community property with separate property; (4) appellee has overcome all presumptions that each and every asset owned by the trust or by her is community property; (5) evidence that appellant Bank handled its trust funds in the same manner as the trustee in this suit is relevant and material; (6) appellee is not personally liable for $5,250 received from the trust estate and used by her to liquidate a mortgage on her homestead which was her separate property.

Appellant's preliminary statement in its brief is as follows: "Appellant's position in this case is that the trial court should have granted it the relief sought against appellee individually and as sole legatee, on at least one of the following theories of the case: (1) The evidence shows that the original corpus had become so commingled with the trust income which accrued during the marriage that it was impossible to identify or segregate much of the original corpus or mutations thereof, so that a large portion of the trust res became community property by virtue of the commingling. (2) The presumption is that all property acquired during marriage or owned at the dissolution of marriage is community, and

the burden is on the party contending otherwise to rebut the presumption by clear convincing and satisfactory evidence. To the extent that defendant failed to trace the properties on hand at the husband's death, to the original corpus or mutations thereof, the trial court should have held such properties to be community property. (3) Even if the property had not become community property by virtue of commingling, and even if the burden of proof was not on the defendant to trace the property to original corpus or mutations thereof, at the very least it must be admitted that the undisputed evidence reveals that a number of the properties on hand at the husband's death had been purchased in whole or in part out of trust income received by the trustee during the marriage. Unless it can be said that income from separate property is separate property, it must be conceded that this portion of the properties on hand at death, at least, belonged to the community estate and should have been applied to pay community debts."

The trust executed by the defendant is as follows: "The State of Texas. County of Dallas. Whereas, heretofore on the 27th day of November, A.D., 1926, E. H. Ray, my father, transferred to me certain bonds by bill of sale, a copy of which bill of sale being attached hereto for a description of said bonds, it is my desire to appoint my said father, E. H. Ray as Trustee to keep said bonds for me and collect the interest thereon and to reinvest the revenue derived therefrom, or to deliver same to me and also to clothe the said E. H. Ray with sufficient power to perform such action for me, and in the event of his death, to appoint my mother, Bell Ray, as substitute trustee; and Whereas, the said E. H. Ray and Bell Ray are willing to act as said trustee and as substitute trustee and to fulfil said duties under my duly executed power of attorney: Now, Therefore, know all men by these presents that I, Roberta Ray, of said State and County, have made, constituted and appointed and by these presents do make, constitute and appoint E. H. Ray of Dallas County, Texas as trustee to hold and be custodian of said bonds for me and also my

true and lawful attorney for me and in my name, place and stead to not only keep possession of said bonds as said trustee but to collect the revenues due on and derived therefrom and to reinvest the same as he thinks best, or to expend the same for my use and benefit, giving and granting unto my said trustee and attorney full power and authority to do and perform any and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intent and purposes as I might do or could do if personally present, thereby ratifying and confirming whatsoever my said attorney shall and may do by virtue hereof in the premises, and in the event of the death of my said father, E. H. Ray, I hereby appoint my mother, Bell Ray as substitute trustee to act in his place and stead with the same powers, rights and privileges that my said father, E. H. Ray, enjoyed as the original trustee. This power of attorney shall be irrevocable on my part furing the lifetime of the said E. H. Ray and during the lifetime of my mother, Bell Ray. In Witness Whereof I have hereunto set my hand this the 27th day of November, A.D., 1926. Roberta Ray." It is acknowledged by Mrs. Wilson and attached thereto is a list of property which constituted the then corpus of the trust.

After the trust instrument became effective there were numerous changes in the corpus of the estate through sales of securities, purchase of other securities, income, etc., as well as certain payments from the trust fund to Mrs. Wilson. Appellant states in its brief that it has never contended that Mrs. Wilson was personally liable on the note, but that it bases the liability of Mrs. Wilson to the Bank on the theory that she received community property without paying community debts; that she is liable personally for the value of any community property which she has disposed of, and that it is entitled to a statutory lien under Art. 3314, R.C.S., against any community property now on hand.

◼ The first and preliminary material question, in our opinion, is whether or not the undistributed profits or income from the

trust in the hands of the trustee is community property. We must answer that the income on the trust corpus was community property from the date of the marriage of appellee to George O. Wilson, now deceased, until the time of the death of George O. Wilson.

The matter of such community income being liable for debts contracted by George O. Wilson, now deceased, during his lifetime and after his marriage to Mrs. Wilson, is, however, material on appellant Bank's right to recover same, either while in the trust or in the hands of Mrs. Wilson since the termination of the trust and the distribution of the assets of the trust to Mrs. Wilson.

Under the view we take of the case, this question is controlled by a proper interpretation of Arts. 3661 and 4616, V.A.C.S., and their application to the facts of this case. Art. 3661 provides, material here, that the community property of husband and wife, except such as is exempt from forced sale, shall be liable for all debts contracted during marriage; Art. 4616 provides that neither the separate property of the wife nor the rents from the wife's separate real estate, nor the interest on bonds and notes belonging to her, nor dividends on stock owned by her, nor her personal earnings, shall be subject to the payment of debts contracted by the husband nor the torts of the husband.

There is no question but that the Bank's note on which it bases its right against the community property of the marriage was contracted by George O. Wilson, now deceased.

Applying the applicable rule to such facts, such income although community property, comes squarely within the exception contained in Art. 3661 (except such as is exempt from forced sale) and within the express provisions of Art. 4616 which exempts the rents, interest, dividends, etc., on the wife's separate property from the payment of debts contracted by the husband.

Under the above facts and our holding thereon, the other points become immaterial and the result notwithstanding such other points controlled by the above affirmative holdings. The counterpoints raising the questions above discussed are sustained and as a result thereof the trial court's judgment must be and it is

Affirmed.

## On Motion for Rehearing.

Appellant has filed a vigorous motion for rehearing in which it briefs one point of error as follows: "The court erred in holding, as the sole ground for its decision, that the properties sought to be reached by appellant are exempt under Article 4616 of the Revised Civil Statutes." It asserts that our original opinion fails to recognize the fact that we are not dealing with "such income" but on the contrary with properties which were indirectly derived from "such income"; citing Strickland v. Wester, 131 Tex. 23, 112 S.W.2d 1047; Walker-Smith Co. v. Coker, Tex.Civ.App., 176 S.W.2d 1002; Articles 4616, 4099, Vernon's Ann. Civ.St.; 18 Tex.Jur., pp. 29 and 816; Article 16, sec. 28, Texas Const., Vernon's Ann. St.; 54 Am.Jur., pp. 247 and 468; Gaddy v. First National Bank, 115 Tex. 393, 283 S.W. 472.

The motion directly raises the question of whether or not a tracing of the assets of the trust will disclose assets which may be reached by execution, or otherwise, under a proper construction of Arts. 4616 and 3661, V.A.C.S.

Appellant contends there are such assets, while appellee contends to the contrary.

The trial court at appellant's request found the facts as follows:

"(1) On November 27, 1926, E. H. Ray, by Bill of Sale, transferred to his unmarried daughter, Roberta Ray, the following securities:

Imperial Japanese Government
Bonds due February 1, 1954   $10,000.00
Czechoslovak State Loan of 1922
due Oct. 1, 1952          10,000.00

Republic of Haiti Bonds due Oct. 1, 1953   10,000.00

Saxan Public Works Bonds due Feb. 1, 1945   10,000.00

Republic of Finland External Loan due March 1, 1950   10,000.00

"(2) On the same date, November 27, 1926, Roberta Ray executed an instrument placing the bonds scheduled in Paragraph 1 in trust with her father as trustee. Upon his death her mother, Mrs. Bell Ray, was named as successor trustee. The trust agreement empowered the trustee 'to not only keep possession of said bonds as said trustee, but to collect the revenues due on and derived therefrom and to reinvest the same as he thinks best, or to expend the same for my use and benefit.'

"(3) Roberta Ray married George O. Wilson on December 29, 1927.

"(4) E. H. Ray acted as trustee until his death, which occurred on October 18, 1940.

"(5) Mrs. Bell Ray acted as trustee after his death until March 20, 1952, when the trust was dissolved and the trust estate was delivered to Roberta Ray Wilson.

"(6) George O. Wilson died September 24, 1951, leaving a will duly probated under which Roberta Ray Wilson was named as sole legatee and independent executrix. She duly qualified and is acting as such.

"(7) Estate of Geo. O. Wilson is insolvent and creditors were paid proportionately only a very small percentage of their claims.

"(8) Geo. O. Wilson served in the Armed Services of the United States from February 24, 1942 until March 13, 1946 and was stationed in North Africa and Italy about thirty-three months of that time.

"(9) On April 16, 1928 the Czechoslovak Bonds were exchanged for Republic of Chile Bonds maturing February 1961, in the principal amount of $10,000.00.

"(10) On June 1, 1931 Imperial Japanese Government Bonds of 1954 were ex-

changed for Imperial Japanese Government Bonds due 1965 in the principal amount of $12,000.00.

"(11) The Republic of Finland Bonds due February 1, 1945 were exchanged for Finland Bonds due 1958. These bonds were refunded at 4% bonds and were redeemed for $9,000.00 in cash on August 31, 1939.

"(12) At time of death of E. H. Ray on October 18, 1940 the trust estate consisted of:

| | |
|---|---|
| Imperial Japanese Bonds | $12,000.00 |
| Republic of Chile Bonds | 10,000.00 |
| Republic of Haiti Bonds | 10,000.00 |
| Saxan Public Works Bonds | 10,000.00 |

and the following obligations of E. H. Ray payable to the trust:

| | |
|---|---|
| Note dated Jan. 1, 1937 covering 1936 income | $ 1,102.22 |
| Note dated Jan. 1, 1938 covering 1937 income | 1,614.40 |
| Note dated Jan. 1, 1939 covering 1938 income | 1,561.73 |
| Note dated Jan. 1, 1940 covering 1939 income | 1,765.57 |
| Account receivable covering income from Jan. 1, 1940 to Oct. 18, 1940 | 1,084.05 |
| Total income obligations | $ 7,127.97 |
| Note dated Jan. 1, 1939 covering sale of Republic of Finland Bonds | 9,000.00 |
| Total obligations of E. H. Ray | $16,127.97 |

"(13) On January 21, 1942 the Estate of E. H. Ray paid to the trust decedent's obligation in the sum of   $16,127.97

"(14) On September 7, 1951 George O. Wilson borrowed the sum of $3,350 from plaintiff, Mercantile National Bank at Dallas, executing his note in that amount to evidence same. Defendant Roberta Ray Wilson was not a party to the note either

as maker, endorser or otherwise. This note bears the following credits:

Deposit in bank offset September 24, 1951 — 14.79

Amount by Executrix of Estate of Geo. O. Wilson on December 10, 1952 — 71.00

leaving a balance due on principal of — $3,264.21

"(15) The note of the plaintiff provided for ten per cent interest after maturity and for 10% attorneys' fees, and the amount due as of May 20, 1954, the date of trial was:

| | |
|---|---|
| Principal | $3,264.21 |
| Interest | 1,180.52 |
| Attorneys' fees | 444.47 |
| | $4,889.20 |

"(16) On September 24, 1951 the date of the death of George O. Wilson, the trust estate consisted of the following assets:

| | | |
|---|---|---|
| Imperial Japanese Bonds due 5–1–65 face value | | $12,000.00 |
| Saxan Public Works Bonds due 2–1–45 face value | | 10,000.00 |
| Republic of Chile Bonds due 12–31–93 face value | | 10,000.00 |
| United States Savings Bonds face value | | 11,000.00 |
| 50 sh. F. W. Woolworth Co. at cost | $2,414.12 | |
| 38 sh. Montgomery Ward at cost | 2,496.03 | |
| 16 sh. Am. Tel. & Tel. at cost | 2,548.96 | |
| 38 sh. Texas Company at cost | 2,470.60 | |
| 50 sh. Houston P & L at cost | 975.00 | |
| | | 10,904.71 |
| Cash | | 163.92 |
| Total | | $54,068.63 |

"(17) As of March 20, 1952, the date of dissolution of the trust estate, its assets consisted of the following:

| | |
|---|---|
| Imperial Japanese Bonds—face value | $12,000.00 |
| Saxan Public Works Bonds—face value | 10,000.00 |
| Republic of Chile Bonds—face value | 10,000.00 |
| Stocks as listed in paragraph 16 above | 10,904.71 |
| Cash | 329.22 |
| Total | $43,233.93 |

"(18) On January 21, 1942, the cash on deposit in the credit of the trust was — $ 770.69

On that date, check of Estate of E. H. Ray was deposited to the credit of the trust in amount of — $16,127.97

Total cash on deposit — $16,898.66

On the same date the following securities were purchased by the trust:

| | | |
|---|---|---|
| U. S. Savings Bonds, Series G. | $11,000 | |
| 50 sh. Dallas Fed. Sav. & Loan | 5,000 | $16,000.00 |

Remaining cash Bal. as of Jan. 21, 1942 — $ 898.66

"(19) Cash on Deposit Jan. 22, 1942 was — $ 898.66

Net income deposited to September 21, 1942 was — 464.38

Cash balance September 29, 1942 was — $ 1,363.04

On that date the trustee purchased

25 sh. Houston Power & Light Co. — 975.00

"(20) The 25 shares of Houston Power & Light Company were subsequently in-

creased to 50 shares by a stock dividend of 25 shares.

"(21) On April 5, 1943 cash on deposit to the credit of the trust was $1,602.62
On April 5, 1943 there
was distributed to
Roberta Ray Wilson $ 400.00
On April 5, 1943 the
trust purchased U.
S. Treasury note of 1,000.00 1,400.00

Cash balance on April 5, 1943
was $ 202.62

"(22) On Aug. 10, 1943 trust cash balance was $ 267.27
On Aug. 10, 1943 the trustee redeemed 50 sh. of Dallas Federal Savings and Loan Ass'n
for 5,000.00

Cash balance after deposit $5,267.27
On Aug. 10, 1943 trustee delivered to Roberta Ray Wilson 5,250.00

Leaving cash balance as of Aug. 10, 1953 (1943) $ 17.27

"(23) The cash distribution of $5,250.00 to Roberta Ray Wilson was used by her to liquidate a mortgage lien upon her homestead.

"(24) On May 6, 1948 the trust bank balance was $ 3.13
On May 6, 1948 the Haiti Bonds
were redeemed for 9,997.50
On June 14; 1948 dividend of
Houston Power & Light Co.
was deposited 25.00

Bank balance on June 14, 1948
was $10,025.63

On June 14, 1948 the trustee purchased the following securities:
F. W. Woolworth Co. 50 sh. $2,414.12
Montgomery Ward 38 sh. 2,496.03
Am. Tel & Tel Co. 16 sh. 2,548.96
The Texas Company 38 sh. 2,570.60
$9,929.71

Trust bank balance after purchase was $ 95.92

"(25) On Aug. 22, 1951 the bank account of Roberta Ray Wilson showed an overdraft of $ (6.59)
On that date the trustee delivered to her the $1,000 U. S. Treasury note purchased on April 5, 1943, which was cashed by her and deposited to her personal account 1,050.00
On September 17, 1951 she deposited 15.00

$1,058.41

Between Aug. 23, 1951 and Sept. 24, 1951 Mrs. Wilson issued various checks amounting to 516.47

The balance in Mrs. Wilson's personal account as of Sept. 24, 1951 the date of the death of George O. Wilson, was $ 541.94

"(26) The checking account of Roberta Ray Wilson was subject only to her signature.

"(27) On Jan. 7, 1952 the trustee converted the $11,000 U. S. Bonds, Series G, to cash and delivered to Roberta Ray Wilson the proceeds on Jan. 22, 1952 amounting to $10,769.00

"(28) On April 24, 1943 George O. Wilson conveyed their homestead to Roberta Ray Wilson by Warranty Deed recorded in Vol. 2407, Page 405, of the Deed Records of Dallas County, Texas, reciting consideration paid out of her separate funds and estate and the property was conveyed to her as her separate property and estate.

"(29) At the time of the payment by Roberta Ray Wilson of the mortgage lien on her homestead (Aug. 10, 1943), George O. Wilson was in the Armed Services of the United States and was stationed either in North Africa or Italy; he was not consulted about the payment, did not make a gift to her of any amount paid on the loan;

but was subsequently advised of her action, and approved the payment.

"(30) Income tax returns for the years 1943, 1944, 1945, 1946, and 1947 showed distributed income from the trust estate, of which one-half was included in the return of Mrs. Roberta Ray Wilson.

"(31) On March 19, 1941 Mrs. Bell Ray, substitute trustee, opened a bank account in her name as trustee. All trust income, and proceeds of trust capital sales were deposited in this account; and all purchases of securities, all expenses incurred and all distributions to the beneficiary, Roberta Ray Wilson, were paid out of the same account by the substitute trustee.

"(32) The plaintiff, Mercantile National Bank at Dallas, in its Trust Department, used the identical procedure in handling its trust accounts as was used by the substitute trustee.

"(33) On Feb. 10, 1949 the Republic of Chile Bonds of 1961 in the principal amount of $10,000 were exchanged for Republic of Chile Bonds 2%–3% due in 1993 with a value of $2,737.50, resulting in a capital loss of $6,562.50."

Under the trust instrument the trustee and substitute trustee were each bound to invest the revenue or deliver the same to Mrs. Wilson, or to expend the same for her use and benefit. Properly considered, the trustees under such instrument were bound to first pay out or expend the income from the trust before paying out or expending the corpus of the trust, and in our opinion there is a presumption that the trustee and substitute trustee did, as was his duty, first pay out or expend such income before paying out or expending the corpus of the trust. The beneficiary had no control over the trust funds and should not be prejudiced by the trustee or substitute trustee placing the income in the same account as that in which he kept the corpus of the estate. Based on the above conclusion, and the trial court's findings that at the time of the death of George O. Wilson, (a) the original Japanese Bonds had been exchanged for other bonds which were on hand at the time of George O. Wilson's death; (b) that the Czechoslovak Loan was exchanged for Republic of Chile Bonds which were on hand at the time of George O. Wilson's death; (c) that the original Saxan Bonds (at this time worthless) were on hand at the time of George O. Wilson's death; (d) that the Haiti Bonds were redeemed for $9,997.50 and that on May 6, 1948 $9,929.71 of such proceeds was invested in Woolworth, Montgomery-Ward, American Tel. & Tel. Co. and Texas Co. Stocks, leaving a balance of $67.79 on hand from such proceeds, which was deposited in the estate bank account; (e) that the Republic of Finland Bonds were redeemed for $9,000 (a loss of $1,000 on the cost thereof); and the $9,000 together with certain of the income from the trust was borrowed by E. H. Ray, trustee, and was later on January 21, 1942 fully repaid by him and then invested in the stocks listed in finding No. 24 above quoted.

On the death of George O. Wilson the trust had on hand in addition to the items set out above $11,000 in U. S. Savings Bonds, fifty shares of Houston P. & L. Stock, and $163.92 in cash. These items are accounted for as follows: On January 21, 1942 the estate of E. H. Ray paid the trust $16,000 to cover (a) $9,000 which he had borrowed from the trust and which the estate had acquired from the sale of the Republic of Finland Bonds and $7,127.97 he owed the estate. The $11,000 in Savings Bonds on hand were purchased (Finding 18) the same day the estate of E. H. Ray paid the $16,000. Such sum is accounted for as follows: Savings Bonds $11,000 and fifty shares of Dallas Federal Savings & Loan Association $5,000. The excess over $16,000 was paid out of the moneys on hand at the time.

Under the above record we will again consider points 6 to 9. They assert insufficiency of the evidence to support findings 9, 10, 11, and 32 above quoted.

Appellant correctly asserts there is no direct evidence to sustain these findings. However they are sustained by circumstantial evidence in the form of nota-

tions on original instruments which, when taken with the original inventories and the nature of the assets on hand on the death of George O. Wilson and when considered together, make questions of fact for the trier of the facts and sustain the findings of fact here questioned. Too, the admission in evidence that appellant uses the same procedure as used here in handling its trust accounts, in our opinion was not reversible error. Under the record the evidence was admissible as a part of the circumstances showing, by secondary evidence, facts which could not be shown by better or by a higher degree of evidence. The applicable rule was stated by former Justice Looney, now deceased, of this Court, in Cocke v. Humphreys & Day, Tex.Civ.App., 293 S.W. 892, at page 893 as follows: "Before evidence can be excluded on the ground that it is secondary, it must appear, either from the nature of the fact to be proven or by evidence introduced by the objecting party, that there is in existence higher evidence and of what it consists. (Citing authorities.)"

We therefore overrule appellant's assignments in its motion for rehearing based on our original disposition of points 6 to 9 inclusive.

We next consider appellant's attack on our action on points 1 to 5 inclusive, summarized in our original opinion. By these points it is contended that the evidence is undisputed that at the time of George O. Wilson's death some of the assets in the hands of the trustee were community property and liable for his debts, created during his lifetime, on the theory that they cannot be traced with sufficient certainty as being exempt property under Art. 4616, V.A.C.S.

■ During the existence of the trust Mrs. Wilson owned an equitable interest only, over which she had no control, and under the terms of the instrument the power was irrevocable by Mrs. Wilson during the lifetime of her father and mother who were trustee and substitute trustee of the trust. In our opinion the instrument created a spendthrift trust. Such a trust is defined in Black's Law Dictionary, 3rd ed., as follows: "A term commonly applied to those trusts which are created with a view of providing a fund for the maintenance of another, and at the same time securing it against his improvidence or incapacity for his protection. Provisions against alienation of the trust fund by the voluntary act of the beneficiary or by his creditors are the usual incidents. * * *"

The record further shows that the trust was not dissolved until March 20, 1952 after the death of George O. Wilson, and after the death of both the trustee and substitute trustee; and the balance of the assets of the trust on hand were thereafter delivered to Mrs. Wilson on March 20, 1952.

We will consider separately the moneys paid by the trustee to Mrs. Wilson, the beneficiary, during the time such trust was in full force and effect, and used by Mrs. Wilson to pay off the mortgage on her homestead. The income from the corpus of the trust was community property, and while held by the trustee and the beneficiary, being income from Mrs. Wilson's separate property, was exempt under Art. 4616, V.A.C.S.; and when used to pay off the mortgage on her homestead—in other words, as a part payment of part of the purchase price of the homestead—it was in effect an exchange of exempt property for other exempt property by Mrs. Wilson; and under such circumstances was also exempt from community debts created by the husband. Schneider & Bros. v. Gray, 59 Tex. 668; 18 Tex.Jur. 816, Exemptions, sec. 14.

■ Such exchange did not affect the exemption, and the Bank has no lien on Mrs. Wilson's homestead as a result thereof.

Considering next the other matters raised in points 1 to 5 inclusive, the trustee and substitute trustee, as said above, were bound to reinvest the income from the trust corpus or deliver same to Mrs. Wilson, or to expend the same for her use and benefit. It follows that they were therefore required to pay out income first, and even if such income was commingled with corpus funds,

it will be presumed that the first moneys paid out, until all income was exhausted, was in fact income; and Mrs. Wilson as beneficiary could not be prejudiced by the trustee or substitute trustee having · deposited both the corpus and· the income in the same bank account, since both items, corpus and income, could be definitely ascertained as to amounts and disbursement by the trustee and substitute trustee in such manner as that each item of corpus or income could be properly ascertained and disbursed to those entitled to it.

The trial court's findings that at the time of·the death of George O. Wilson, (a) the Japanese Bonds had been exchanged for other bonds which were still in the hands of substitute trustee, supported by evidence, settled the question that such bonds were a part of the corpus of the estate and not income; (b) that the Czechoslovak Loan was exchanged for Republic.of Chile Bonds which were on hand by the substitute trustee, were part of the estate corpus; (c) that the original Saxan Bonds were on hand and were estate corpus; (d) that the Haiti Bonds were redeemed for $9,997.50 and later $9,929.71 thereof together with $7,127.97 paid by Ray to the estate, to the extent of $16,000 was invested in Woolworth, Montgomery-Ward, American Tel. & Tel. and Texas Company stocks, leaving a balance of $67.69 which constituted capital gain remaining in the estate bank account, being supported by evidence, were binding on this Court; (e) Finding 11, that the Republic of Finland Bonds were redeemed for $9,000 and together with certain estate income amounting to $7,127.97 was taken from the trust by E. H. Ray and his note for $16,127.97 was deposited in its stead, and that the note was repaid by E. H. Ray to the trust on January 21, 1942 (Finding 13), and at that time $9,929.71 thereof was invested in stocks listed in Finding No. 24 above quoted, being· supported by evidence, is also binding on this Court.

The $11,000 par Savings Bonds on hand when George O. Wilson died were purchased (Finding 18) the same day E. H. Ray paid the estate $16,127.97, on January 21, 1942, as follows: Savings Bonds $11,000, and fifty shares of Dallas Building & Loan Association stock $5,000, and the excess over $16,000 was paid by Ray out of moneys on hand at the time.

Under such facts $9,997.50 of such investment was corpus and $6,002.50 was income; and such stocks must be charged with that amount in favor of the community estate of George O. Wilson, deceased, and Mrs. Wilson as of the time of George O. Wilson's death. The findings further show a balance of $541.94 in Mrs. Wilson's bank account at the time of George O. Wilson's death. Under the record this sum was the balance from the sale of one Treasury note cashed by Mrs. Wilson and deposited in her account. The $541.94 was therefore a distribution to her of a part of the proceeds from such corpus and therefore not income on hand at George O. Wilson's death.

Our above holdings necessitate ·the sustaining of points 1 to 5, inclusive, in part, and modifying the judgment below so as to hold that $6,002.50 of the moneys from the Savings Bonds was community property.

However, such Savings Bonds were not liable for the debts of George O. Wilson, deceased, under Art. 4616, V.A.C.S., unless or until converted into other assets not exempt under Art. 4616, V.A.C.S. Under the record here we cannot say that such bonds have been so converted as to lose the Art. 4616 exemption. We therefore overrule appellant's assignments asserting error in our overruling points 1 to 5 inclusive.

Point 10, if material to the disposition of this appeal, would necessitate our examining the record to ascertain if Finding 7 is supported by any evidence. However, under our holding on the other points, point 10 has become immaterial to the disposition of the case. In other words, if sustained would not affect the result reached by us. Assignments attacking our disposition of Point 10 are therefore overruled.

Finding no error in our former judgment of affirmance, appellant's motion ·for rehearing is overruled.