**In the Matter of the MARRIAGE OF Charles E. LONG and Kathy Long, and In the Interest of a child.**

No. 8374.

Court of Civil Appeals of Texas, Texarkana.

Oct. 12, 1976.

Frank Elder, III, Kilgore, for appellant.
Otto Ritter, Longview, for appellee.

RAY, Justice.

This is a domestic relations case. Charles E. Long and Kathy Long, husband and wife, both petitioned the Domestic Relations Court of Gregg County to grant them a divorce. The cause was tried to the Court without the aid of a jury, and the trial court granted appellee, Charles E. Long, a divorce from Kathy Long. Appellant, Kathy Long, was appointed managing conservator of the couple's only child, and appellee was appointed the possessory conservator.

Kathy Long appeals from those parts of the judgment awarding her alimony; dividing the estate of the parties; obligating persons not standing in loco parentis to the minor child to pay child support; and awarding her inadequate attorney's fees. Eight points of error are presented for our consideration.

That portion of the judgment complained of as alimony is as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Charles E. Long pay to Respondent, Kathy Long, the sum of $200.00 per month, starting the 24th day of September, 1975, and thereafter, a like payment on the same day of each month for a total of eighty-four (84) months, or until the said Kathy Long remarries."

In *Francis v. Francis*, 412 S.W.2d 29 (Tex. 1967), it was stated:

"The statutes and public policy of this State do not sanction alimony for the wife after a judgment of divorce has been entered. See *McElreath v. McElreath*, 162 Tex. 190, 345 S.W.2d 722, 747 (1961); *Cunningham v. Cunningham*, 120 Tex. 491, 40 S.W.2d 46, 75 A.L.R. 1305 (1931); Art. 2328b–1, Sec. 2(6); Art.

2 All references to articles are to Vernon's Ann. Texas Civil Statutes.

2328b–3, Sec. 7.[2] In this State as in other states, alimony is an allowance for support and sustenance of the wife, periodic or in gross, *which a court orders a husband to pay*; but in this State, unlike in other states, such support payments may be ordered only 'until a final decree shall be made in the case.' Art. 4637; *Cunningham v. Cunningham*, supra. Support payments ordered to be made after divorce from the income from the husband's property, although considered alimony in many jurisdictions, is not considered alimony in this State. *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21 (1923); *Keton v. Clark*, 67 S.W.2d 437 (Tex.Civ. App.—Waco 1933, writ refused). When its true meaning is distilled from the statutes and the court decisions of this State, alimony which contravenes the public policy of the State is only those payments imposed by a court order or decree on the husband as a personal obligation for support and sustenance of the wife after a final decree of divorce."

■ It is clear from the quoted language of the divorce decree in this case that the eighty-four (84) monthly payments were a personal obligation imposed upon the husband by court order for the support and sustenance of the wife after a final decree of divorce. As such, those payments constitute alimony which contravenes the public policy of this state.

■ The trial court could have ordered a division of property that included sums to be paid after the divorce from the income from the husband's separate property. *Francis v. Francis*, supra.

"For the purpose of doing equity, the court may award all the personal property to either spouse and may subject the income, rents or revenues of all real estate, belonging to either or both of the spouses, to the support of either or both of them, or to the education and support of the children." *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21 (Tex.1923).

In 1954, H. L. Long and Bettye Virginia Long, parents of Charles E. Long, established an irrevocable trust consisting of oil and gas producing property naming their four children as beneficiaries, share and share alike. Under the terms of the trust, one-half of the corpus then in the trust for a child would be distributed upon the beneficiary attaining the age twenty-five, and the trust would terminate upon the distribution of the remaining one-half at age thirty. By 1961 the trust had discharged all indebtedness against the properties and was operating at a profit. From the period of January 1, 1961, to June 30, 1969, the trust had accumulated approximately $25,000.00 net income for each of the four beneficiaries. Charles attained age twenty-five on August 14, 1974, and was entitled to one-half of his share of the trust corpus. Suit for divorce was filed in April of 1975 and granted on October 7, 1975.

On June 26, 1969, Charles E. Long, then age twenty, and having completed two years at Kilgore College, married Kathy Johnson, age seventeen, who had completed ten years of formal education. Both Kathy and Charles worked at unskilled or semi-skilled jobs until they separated in June 1974. At the time of trial, Charles had been working as a reservation agent for an airline earning $850.00 per month (take-home pay of approximately $625.00) for one

year. Prior to that he had been employed as a roustabout for Rusk County Well Service, a company owned by his mother, and operated a gymnasium owned by the trust. Kathy, on the other hand, at time of trial was enrolled in a vocational rehabilitation program working 40 hours per week, earning $300.00 per month, and attending school to earn her high school equivalency diploma. Prior to that time, she had worked at various jobs including waitress, assembly line worker, and cashier in a retail store.

It is undisputed that the parties, for all practical purposes, never accumulated any community property.

The trustees were parties to this suit and were ordered by the trial court to pay $200.00 per month for the support of the minor child of the parties.

The Charles E. Long Trust will terminate August 14, 1979, at a time when Barbara Ann Long will be age seven.

Sometime after Charles attained the age of twenty-five, he orally stated his intent to allow the trustees of the Charles E. Long Trust to continue to manage his one-half share which the trustees were under an obligation to distribute within a reasonable time after August 14, 1974.

Kathy Long complains of the division of the estate of the parties. The rule in such attacks is that Texas Divorce Courts are given wide discretion in making a division of the estate of the parties; equal division is not required; upon appeal it is presumed that the trial court exercised its discretion properly, and the cause will be reversed only where there is a clear abuse of discretion. *Hedtke v. Hedtke*, supra; *Bell v. Bell*, 513 S.W.2d 20 (Tex.1974); *Wilkerson v. Wilkerson*, 515 S.W.2d 52 (Tex. Civ.App. Tyler 1974, no writ); *Looney v. Looney*, 541 S.W.2d 877, 1 Tex.Ct.Rpts. 713 (Tex.Civ.App. Beaumont 1976, no writ). In the exercise of its discretion, the trial court may consider, among other things, the age and physical condition of the parties, their relative need for future support, fault in breaking up the marriage, benefits the innocent spouse would have received from a continuation of the marriage, the size of the estate, and the relative abilities of the parties. *Wilkerson v. Wilkerson*, supra; *Benedict v. Benedict*, 542 S.W.2d 692, 1 Tex.Ct. Rpts. 770 (Tex.Civ.App. Fort Worth 1976, no writ).

Appellant's first, second, third and fifth points of error assert that the trial court abused its discretion in dividing the estate of the parties. The trial court had only separate personal property (not considering, for the moment, the character of trust income) with which to work. By the appellant's own calculations she owned no real or personal property, except for her personal effects, and no community property (again, not considering trust income). The appellant estimates that she was awarded approximately 20% of the appellee's separate personal estate. She believes this to be an inadequate and unequal division. The appellant argues this division to be partially the result of a mistakenly characterized debt of $35,704.42 by the appellee which appellee asserts as a community debt evidenced by promissory notes some of which are payable to his trust. Kathy contends that the natural consequence of this characterization was to reduce the amount of the appellee's separate estate awarded to her. The evidence shows that $11,560.28 of the $35,704.42 was spent by the husband for 1974 income taxes ($8,000.00) and $3,560.28 for his 1975 living expenses. Both the husband and the trustees conceded the balance was spent for the support of the family during the marriage.

The statute empowering the courts to effect a property division is Section 3.63 of the Texas Family Code which provides the following:

"In a decree of divorce or annulment the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage."

This statute, and its predecessor, Article 4638, Texas Revised Civil Statutes, have been interpreted to include all the separate personal property of either spouse

within the meaning of "estate of the parties" and therefore such property is susceptible to division. *Hedtke v. Hedtke*, supra; *Cooper v. Cooper*, 513 S.W.2d 229 (Tex.Civ. App. Houston-1st Dist. 1974, no writ).

■ Charles E. Long had a present possessory interest in the trust at the time of trial. The trust had terminated as to one-half of the corpus of the trust. Charles was entitled to that one-half of the corpus and the income that had accumulated on that portion of the corpus following his having reached age twenty-five. The one-half of the corpus was his separate property but was appropriate for consideration by the trial court in dividing the estate of the parties. The accumulated income from his one-half of the corpus after reaching age twenty-five was community property and was also subject to division by the court. However, the trial court was not required to set aside any certain percentage of the property for either spouse. The appellant has failed to demonstrate that her receipt of but 20% of the appellee's separate personal estate was an abuse of discretion.

■ It is not clear that the sums "borrowed" will actually be repaid but rather they may have come by way of advancement from the appellee's interest in his one-half of the corpus and/or the trust. On August 14, 1969, Charles became 21 years of age. The trust provided in Sec. II(b) that:

> "Upon the attainment of the age of twenty-one (21) years by Charles Edward Long, the Trustees may pay to him, at such intervals as they may determine during the continuance of the TRUST, so much of the net income of the TRUST ESTATE as the Trustees, in their absolute and sole discretion, may deem proper and appropriate and determine to distribute unto the said Charles Edward Long. It is our wish that the Trustees distribute sufficient income unto Charles Edward Long which, when added to the income available to him from other sources, will adequately provide for his support and maintenance in accordance with his station in life. . . ."

It was after this time that the first in a series of notes was executed by Charles. The first note was dated March 31, 1970, in the sum of $985.00 which was money sent to Charles and his wife when they temporarily lived in California. The other notes which totaled the sum of $35,704.42 (including the March 31, 1970, note) were executed on and after January 1, 1975, when Charles was already age twenty-five. The husband (the same being true for the wife) is obligated to furnish support for community living, and if no community funds are available he must utilize his separate funds. Separate funds spent for community living are deemed a gift to the community for its well-being and use. Texas Family Code, Sec. 4.02 (1973); *Norris v. Vaughan*, 152 Tex. 491, 260 S.W.2d 676 (1953). The evidence shows that on September 24, 1975, the date of the trial, he controlled in his own right separate personal property in the form of liquid assets of at least $85,000.00. The court found that the promissory notes in the sum of $35,704.42 were nearly all executed by Charles after the parties separated on June 15, 1974. Cash on Deposit as of August 31, 1974, was $50,889.71. On August 14, 1974, when Charles reached the age of twenty-five, he was entitled to the cash on deposit from the one-half of the corpus of the trust which was then $50,-889.71.

■ The appellant argues that the "debt" characterization led to an inequitable property division. This is perhaps logical, but not clearly demonstrated. The court was required to take all relevant property interests into consideration in reaching an equitable division of the estate of the parties. *Gillis v. Gillis*, 435 S.W.2d 171 (Tex.Civ.App. Fort Worth 1968, writ dism'd); *Bell v. Bell*, supra. The court's characterization of separate funds applied to support the community as a community debt rather than an advancement might have precluded an accurate consideration of all relevant property interests. On retrial the court will need to clearly determine whether the notes constituted community debts or advancements. If the notes were community debts the court may in dividing

the estate of the parties order the community funds to be applied to the payment of the debts as far as the funds will go and order the remainder paid out of the husband's separate funds. If the notes represent advancements made by the trustees out of the trust funds pursuant to Sec. II(b) of the trust or out of the one-half of the trust to which Charles was entitled, then the court need not take the notes into consideration in dividing the estate of the parties.

The appellant's fourth point of error complains of the trial court's failure to find that one-half of the interest, dividends, rentals of equipment, and cattle sales earned by the Charles E. Long Trust during the marriage and subject to non-discretionary distribution by the trustees was community income. Conclusions of law five and six specifically deny the community estate of the parties any interest in the trust.

 Income received by a married beneficiary on the trust corpus to which the beneficiary is entitled has been held to be community property, *Mercantile Bank at Dallas v. Wilson*, 279 S.W.2d 650, 654 (Tex. Civ.App. Dallas 1955, writ ref'd n.r.e.), and has been taxed accordingly. *McFaddin v. Commissioner of Internal Revenue*, 148 F.2d 570 (5th Cir. 1945).

Trust income which a married beneficiary does not receive, and to which he has no claim other than an expectancy interest in the corpus, has been held not to be community property. *Currie v. Currie*, 518 S.W.2d 386 (Tex.Civ.App. San Antonio 1974, writ dism'd).

The appellee contends that *Currie* is directly on point; the appellant contends that the *Mercantile Bank* case controls. The dispute is based upon the significance of the appellee's election not to seek a distribution of his one-half of the trust when he reached age twenty-five. By the terms of the trust, the income was to be accumulated until the beneficiary (appellee) reached age twenty-one. At that time, income was distributable solely at the discretion of the trustees. When the beneficiary reached age twenty-

five the trust dictates that the trustees deliver and distribute unto the beneficiary one-half of the assets and property comprising the corpus of the trust. At age thirty, the beneficiary is to receive the remaining one-half. The appellee reached age twenty-five at a time after separation but before suit for divorce had been filed. The appellee decided to leave his half interest in the trust though he was entitled to withdraw approximately $85,000.00 in liquid assets exclusive of interests in real property.

The appellant does not claim a community interest in the entire $85,000.00, nor does she deny that such portion of this sum attributable to the corpus acquired by gift is separate property of the appellee. Kathy does contend that some $10,853.83 is attributable not to the corpus but to the income from the corpus. Outlined in appellant's brief is the income from interest, dividends, equipment rental and cattle sales which shows that from August 15, 1974, to July 31, 1975, there was accumulated $4,973.21. This is the only sum that we view to partially be community property from the sources named since the $4,973.21 represented income on the total Charles E. Long Trust. Only one-half of the $4,973.21 was subject to distribution to Charles since the other one-half of such sum still belonged to the trust. It thus appears that $2,486.60 could be classed as community income to Charles and Kathy.

 Unlike the situation in *Currie*, supra, the beneficiary in the case before us was entitled to a present possessory interest in one-half of the trust corpus and the income from that one-half. In the *Mercantile Bank* case, supra, undistributed income was in the hands of the trustees but the beneficiary had a present possessory interest in the funds. As in the *Mercantile Bank* case, we conclude that the income on the trust corpus should have been labeled community property.

The appellee suggests that should this Court reach the conclusion that the income from trust corpus to which the beneficiary was entitled to present possession be de-

clared community property though the corpus and the income be voluntarily left in the hands of the trustees, it still should not be deemed fatal to the judgment as a whole. This suggestion is made at least plausible by the fact that the appellant concedes that she has received an amount equivalent to a lump sum award of $13,-397.70, an amount greater than the community half interest she asserts to the trust income. As was the case with the trial court's possible mischaracterization of the "community debt," it is conceivable that the court's possible mischaracterization of trust income was but harmless error, and that the judgment could still be construed not to be an abuse of discretion. These errors, however, go so deeply to the heart of the case that it is difficult to disregard them. The trial court failed to consider all of the relevant property interests of the estate of the parties. We therefore conclude that the ends of justice require a remand of this case for further consideration by the trial court.

Appellant complains of the trial court's order obligating persons not standing in loco parentis to the minor child to pay child support. The trustees of the Charles E. Long Trust were ordered to pay to the appellant $200.00 per month for the benefit of the minor child, Barbara Ann Long. The appellant fears that this order would be unenforceable were the trustees to refuse to pay, or upon the termination of the trust scheduled for August 14, 1979, when appellee reaches age thirty and the child will be age seven.

The validity of this point hinges on the interpretation of Sec. 14.05(a) and (c) of the Texas Family Code. The Code provisions are as follows:

"(a) The court may order either or both parents to make periodic payments or a lump-sum payment, or both, for the support of the child until he is 18 years of age in the manner and to the persons specified by the court in the decree. . . .

(c) The court may order the trustees of a spend-thrift or other trust to make disbursements for the support of the child to the extent the trustees are required to make payments to a beneficiary who is required to make support payments under this section. If disbursement of the assets of the trust is discretionary in the trustees, the court may order payment for the benefit of the child from the income of the trust, but not from the principal."

The appellant urges that because the appellee is not by the terms of the judgment required to make support payments in his individual capacity, that Sec. 14.05(c) does not apply. The trustees, suggests the appellant, are not "required to make payments to a beneficiary who is required to make support payments under this section."

We are inclined to agree with the appellant. Section 4.02 of the Family Code states that each spouse has the duty to support his or her minor children, but Section 14.05(c) does not speak in terms of duty to support, but states that the trustees may be ordered to pay child support to the extent they are required to make payments to a beneficiary "who is required to make support payments *under this section.* [Sec. 14.-05]." We therefore conclude that the court must first order the trust beneficiary-parent to make the child support payment or payments, after which it may then order the trustees to make disbursement for the support of the child.

The judgment of the trial court is reversed and the case is remanded for a new trial.