Appellant=s Motion for Rehearing Granted; Reversed and Remanded; Majority Opinion
of December 31, 2008, Withdrawn; Majority Opinion on Rehearing filed October 8,
2009, Concurring Opinion on Rehearing Filed December 3, 2009.                   

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00717-CV

____________

 

TIMOTHY L. SHARMA, Appellant

 

V.

 

LISA C. ROUTH, Appellee

 



 

On Appeal from the 246th
District Court

Harris County, Texas

Trial Court Cause No. 2004-61264

 



 

C O N C U R R I N G  O P I N I O N  O N   R E H E A R I N G 








In seven issues, appellant, Timothy L.
Sharma, challenges the trial court=s characterization
of income from two testamentary trusts created by Sharma=s first wife,
Alice Hinniker Sharma, the division of the marital estate, the reliability of
expert testimony, and the trial court=s refusal to file
additional findings of fact and conclusions of law.  Because the trial court
mischaracterized a portion of the marital property, namely the trust income
from Alice=s testamentary trusts, the majority correctly reverses
and remands this case.  Although I agree with the majority=s disposition, I
would reverse and remand for different reasons.  I therefore concur in the
judgment only and write separately to explain my reasons. 

I.  FACTUAL BACKGROUND

Sharma and appellee, Lisa C. Routh, were
married on August 29, 2004.  The couple separated months later, and their
marriage was dissolved on January 26, 2006.  In the final decree of divorce,
the trial court characterized certain trust income as community property.  The
trust at issue had been created by Alice, Sharma=s first wife.  In
her last will and testament, Alice created two trusts, the Marital Deduction
Trust (AMarital Trust@) and the Family
Trust.  

A.  The Marital Trust








Under the Marital Trust, Sharma is the
trustee and beneficiary; Upward Reach Foundation, a charity created by Alice
and Sharma, is named as the remainder beneficiary.[1] 
The Marital Trust provides for mandatory distributions of trust income to the
beneficiary.  The trust also provides for distributions from Atrust principal .
. . as are necessary . . . to provide for [Sharma=s] health,
support, and maintenance in order to maintain him . . . in accordance with the
standard of living to which [he] is accustomed . . . .@  At the time of
Alice=s death in July
2001, the Marital Trust owned two buildings housing psychiatric hospitals in
Houston.  The hospitals= services and other assets were owned by
Cambridge International, Inc. and North Houston Enterprises, Inc. (companies
owned by Alice and Sharma).  In 2002, additional corpus was transferred into
the Marital Trust.  Specifically, the following pieces of corpus were added:
(1) 6798 shares of common stock in Cambridge International; (2) an 86.25% interest
in real estate located on Lake Houston (the ALake Houston
Property@); and (3) an
83.08% interest in real estate located on Earle Street in the Houston area (the
AEarle Street
Property@). 

B.  The Family Trust

The Family Trust also names Sharma as the
trustee and beneficiary; the remainder beneficiary is Upward Reach Foundation. 
The Family Trust provides for distributions from trust income and principal as
necessary Ato provide for [Sharma=s] health, support
and maintenance in order to maintain him . . . in accordance with the standard
of living to which [he] is accustomed . . . .@  The Family Trust=s corpus initially
consisted of 1272 shares of common stock in Cambridge International.

C.  Sale of Corpus in the Marital Trust

In early 2003, Sharma and his financial
advisors created a plan to convert the two for-profit psychiatric hospitals
into tax exempt hospitals, requiring that the hospitals be sold to a tax exempt
entity.  The two psychiatric hospitals were renamed Intracare and Intracare
North.  Sharma then created the Cambridge Health Foundation, the 501(c)(3)
corporation for the purpose of acquiring the two hospitals.[2] 
Sharma serves on the board of trustees for Cambridge Health Foundation.  








In December 2003, Sharma, acting as
trustee to the Marital Trust, conveyed Intracare and Intracare North to Cambridge
Health Foundation.  The sale was financed by five promissory notes: one note
was made payable to the Marital Trust, another to North Houston Enterprises,
and three notes to Cambridge International.  The first note was made payable to
the Marital Trust for the real property on which the buildings were located
(referred to hereinafter as the AMT building note@).  The MT
building note was in the amount of $30,115,000.00 and became corpus of the
Marital Trust.  

The second note was made payable to North
Houston Enterprises in the amount of $1,127,494.00 for its ownership interest
in Intracare North (the AHouston Enterprises note@).[3] 
The three remaining notes, totaling $5,814,475.00, were made payable to
Cambridge International and were divided between the three co-owners of
Cambridge International.  A note in the amount of $3,952,680.10 was transferred
to the Marital Trust (the AMT asset note@), which owned
6798 shares of Cambridge International common stock.  A note in the amount of
$1,122,193.68 was made payable to Cambridge International but was not
transferred to the Marital Trust; instead, this note was subsequently
transferred to Sharma for his ownership interest in Cambridge International.  A
note in the amount of $739,601.22 was transferred to the Family Trust (the AFT note@), which owned
1272 shares of common stock in Cambridge International.  Subsequently, the
principal and accrued interest on these notes were generally transferred to
Sharma=s personal
account.          

D.  Divorce Proceedings    








Shortly after the parties= separation in
2004, Sharma filed an original petition for dissolution of the marriage.  He
initially obtained a default judgment against Routh.  After Routh successfully
moved for a new trial, the trial court set aside the first decree.  A trial on
the merits commenced on October 10, 2005 and continued thereafter for 13 days. 
One of the primary issues at trial was the proper characterization and division
of the interest accrued during the marriage on the Marital and Family trusts. 
At the time, the Marital Trust owned the MT building and MT asset notes.[4] 
The Family Trust owned the FT note.  Both parties admitted and relied on expert
testimony regarding the proper characterization of the trust interest income
from the Marital and Family trusts.  

On May 24, 2006, the trial court signed
the final decree of divorce, dissolving the marriage.  The trial court also
characterized the accrued interest on the MT building note, the MT asset note,
and the FT note as community property.  In its findings of fact and conclusions
of law, the trial court specified the amount of interest accrued on the notes
during the marriage.  The MT building note had accrued $2,096,067.00 in
interest, while the MT asset note had accrued $175,996.00.  The Houston
Enterprises note had accrued $50,146.00 in interest during the marriage, and
the FT note had accrued $32,955.00.   The trial court found the interest
accrued during the marriage was community property and awarded Routh 50%
thereof.  

E.  Issues on Appeal








Sharma raises seven issues on appeal.  In
issues one through four, Sharma challenges the trial court=s characterization
of the trust income as community property.[5] 
First, he contends that the trust income is his separate property on the basis
that because he is not a named remainder beneficiary, he is not entitled to
receive trust principal.  Second, Sharma argues that the Aincome from
separate property is community property@ rule is not
controlling in this case because he did not own the property giving rise to the
income.  Third, Sharma claims that the interest is his separate property
because he acquired it by gift or devise.  Fourth, Sharma argues that the trial
court=s
mischaracterization of the trust income constitutes reversible error.  In his
fifth issue, Sharma claims that the trial court erred by including the trust
income as part of the marital estate absent a favorable finding on Routh=s claims for
reimbursement or fraud.  In his sixth issue, Sharma contends that the testimony
of Routh=s expert, Jeannie
McClure, was not reliable with respect to the proper characterization of the
trust income.  Lastly, Sharma alleges that the trial court erred in refusing to
file additional findings of fact and conclusions of law after it made its initial
findings.   

II.  STANDARD OF REVIEW 

We review the trial court=s characterization
of property under an abuse-of-discretion standard.  Murff v. Murff, 615
S.W.2d 696, 698B99 (Tex. 1981); Stavinoha v. Stavinoha,
126 S.W.3d 604, 607B08 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  The issue of whether property is separate or community
is determined by the facts that, according to rules of law, give character to
the property.  Raymond v. Raymond, 190 S.W.3d 77, 80 (Tex. App.CHouston [1st
Dist.] 2005, no pet.).  We may reverse the trial court only if, after reviewing
the record, it is clear that the trial court=s decision is an
abuse of discretion or is manifestly unjust and unfair.  Stavinoha, 126
S.W.3d at 607B08; see also Sutton v. Eddy, 828 S.W.2d 56, 58
(Tex. App.CSan Antonio 1991, no writ) (stating that the record
must affirmatively show that the trial court=s decision is
arbitrary and unreasonable).    

Under this abuse-of-discretion standard,
the legal and factual sufficiency of the evidence are not independent grounds
for error, but are merely relevant factors in assessing whether an abuse of
discretion has occurred.   Stavinoha, 126 S.W.3d at 608.  When a court
mischaracterizes separate property as community property, the error requires
reversal because the subsequent division divests a spouse of his or her
separate property.  Smith v. Smith, 22 S.W.3d 140, 147 (Tex. App.CHouston [14th
Dist.] 2000, no pet.); McElwee v. McElwee, 911 S.W.2d 182, 189 (Tex.
App.CHouston [1st
Dist.] 1995, writ denied).

III.  CHARACTERIZATION OF TRUST INCOME








In Sharma=s first four
issues, he contends that the trial court abused its discretion by improperly
characterizing the trust income as community property.  According to Sharma,
the trust income is his separate property because he had no interest in the
trust corpus, and he acquired the interest by gift or devise.  

A.  Definition of Separate and Community Property 

In Texas, all marital property is either
separate or community property.  Separate property is defined by the Texas
Constitution as property acquired before marriage or during marriage by gift,
devise, or descent.  Tex. Const. art. XVI, ' 15.  Community
property consists of property, other than separate property, acquired by either
spouse during marriage.  Tex. Fam. Code ' 3.002; Barnett
v. Barnett, 67 S.W.3d 107, 111 (Tex. 2001).  There is a statutory
presumption that all property possessed by either spouse during or on
dissolution of marriage is community property.  Tex. Fam. Code ' 3.003(a); Barnett,
67 S.W.3d at 111.  To overcome this statutory presumption, a spouse claiming
assets as separate property is required to establish his separate character by
clear and convincing evidence.  Tex. Fam. Code ' 3.003(b);  Stavinoha,
126 S.W.3d at 607.  AClear and convincing@ evidence means
the measure or degree of proof that will produce in the mind of the trier of
fact a firm belief or conviction as to the truth of the allegations sought to
be established.  Tex. Fam. Code ' 101.007; In re
J.F.C., 96 S.W.3d 256, 264 (Tex. 2002).   

B.  Characterization of Trust Income








The property in question is trust income
in the form of interest payments from the MT building, MT asset, and FT notes. 
Courts have articulated the following rule: if a married beneficiary has an
interest in trust principal and receives income from the principal, the income
is characterized as community property.  Ridgell v. Ridgell, 960 S.W.2d
144, 148 (Tex. App.CCorpus Christi 1997, no pet.) (holding
that trust income is community property where the spouse beneficiary maintains
an interest in trust corpus); In re Marriage of Long, 542 S.W.2d 712,
718 (Tex. Civ. App.CTexarkana 1976, no writ) (concluding that
income received on trust corpus is community property if married beneficiary is
entitled to corpus); Mercantile Nat=l Bank at Dallas
v. Wilson, 279 S.W.2d 650, 654 (Tex. Civ. App.CDallas 1955, writ
ref=d n.r.e.) (holding
that income on trust corpus during the marriage is community property where
spouse has interest in corpus); c.f. Cleaver v. Cleaver, 935
S.W.2d 491, 493B94 (Tex. App.CTyler 1996, no
writ) (holding that trust income is separate property only where trust
prohibits distributions from corpus).  Thus, if the record reveals that Sharma
(1) has an interest in the corpus and (2) received trust income, the interest
is community property.  See Ridgell, 960 S.W.2d at 148; Long, 542
S.W.2d at 718; Wilson, 279 S.W.2d at 654. 

Interest in Trust Corpus

The trust corpus consisted of the
promissory notes payable to the Marital Trust and the Family Trust.  Thus, the
respective principal payments on the notes became part of trust corpus.  As
trust corpus, these principal payments should have been deposited into trust
accounts.  Instead, as Sharma=s former CPA, Elizabeth Bunk, and
bookkeeper, Valinda Allen, testified, all principal and interest payments made
to the Marital and Family trusts were directly deposited into Sharma=s personal
account, not separate trust accounts, until April 2005.  It was improper for
Sharma to deposit trust corpus into his separate personal bank account.  See
Eaton v. Husted, 141 Tex. 349, 357, 172 S.W.2d 493, 498 (1943) (reasoning
that a trustee must not mingle trust funds with his own).  Additionally, a
financial statement introduced at trial reflected that Sharma was due to
receive principal payments on particular notes.  Any receipt of principal
payments by Sharma, without meeting the invasion requirements set forth by the
trust settlor, would constitute an improper invasion of corpus. 








The settlor to the two testamentary trusts
authorized invasion of corpus only Aas . . . necessary
. . . to provide for [Sharma=s] health, support, and maintenance in
order to maintain him . . . in accordance with the standard of living to which
[he] is accustomed . . . .@  Without any evidence before us showing
that a corpus distribution was necessary or made for Sharma=s health, support,
or maintenance, we conclude that Sharma did not meet the invasion criteria as
set forth in the trust and was not entitled to trust corpus.  Accordingly,
principal payments made to the trusts could not properly be distributed
to Sharma.  See Beaty v. Bales, 677 S.W.2d 750, 754 (Tex. App.CAustin 1984, writ
ref=d n.r.e.) (with
the exception of statutorily authorized powers, a trustee can exercise only
those powers expressly granted by the settlor); see also Tex. Prop. Code
'' 113.029(a)[6],
113.051.  Although Sharma improperly took personal possession of the funds,
such physical possession without a showing of need did not give Sharma a right
to the principal payments or other trust corpus.  See Cleaver, 953
S.W.2d at 493B94 (spouse beneficiary had no interest in corpus
because she had no right or authority to invade the corpus).  As such, the
principal payments remained trust property.  See Kennedy v. Baker, 59
Tex. 150 (1883) (wrongful possession or conversion of trust property does not
divest the trust=s ownership of such property); Eaton,
141 Tex. at 357B59, 172 S.W.2d at 498B99 (trust funds
improperly commingled with trustee=s own funds stay
with the trust).








Because the principal payments remained
trust property, Sharma had no interest in the corpus.  See Cleaver, 953
S.W.2d at 493B94.  Accordingly, the trust income arising from
trust corpus, namely the interest payments, were not community property.  See
Ridgell, 960 S.W.2d at 148 (holding that trust income is community property
only where the spouse beneficiary maintains an interest in trust corpus); In
re Marriage of Long, 542 S.W.2d at 718 (concluding that income received on
trust corpus is community property only if married beneficiary is entitled to
corpus); Wilson, 279 S.W.2d at 654 (holding that income on trust corpus
during the marriage is community property where spouse has interest in
corpus).  Therefore, appellant=s second issue should be sustained.[7]


IV.  CONCLUSION

The decree of divorce erroneously found
that the trust income was community property, subject to division.  Because the
characterization, award, and division of the trust income impacted the trial
court=s Ajust and right@ division of the
marital estate, the majority properly reverses the lower court=s judgment and
remands this cause for further proceedings.  

 

 

/s/      Adele Hedges

Chief Justice

 

 









[1]  Routh disputes whether the Marital Trust has a
remainder beneficiary.  On voir dire, Deo Shanker, Sharma=s nephew and financial advisor, testified that Sharma
was the sole beneficiary of the Marital Trust.  Additionally, at the time of
trial, Upward Reach Foundation had ceased to exist and had been renamed the
Timothy and Alice Sharma Foundation. 





[2]  The 501(c)(3) corporation was originally named the
Alice and Timothy Sharma Foundation and was thereafter changed to Cambridge
Health Foundation.  The former Alice and Timothy Sharma Foundation is a
separate entity from the Timothy and Alice Sharma Foundation, which is the
newly named remainder beneficiary.





[3]  Sharma contends that because he individually owned
North Houston Enterprises, this note was not subsequently transferred to either
trust. 





[4]  Prior to trial, the Lake Houston Property and most
of the Earle Street Property, both part of the corpus in the Marital Trust were
sold.  The proceeds from the sales were deposited into Sharma=s personal account.





[5]  On review, Sharma disputes only the characterization of the interest
accrued during the marriage on the MT building, MT assets, and FT notes
totaling $2,305,018.00.





[6]  During the 2009 legislative session, the Texas
Legislature enacted S.B. No. 666 regarding the administration of charitable
trusts.  See Act of May 27, 2009, 81st Leg., R.S., ch. 754, ' 1, 2009 Tex. Sess. Law Serv. 1904, 1904 (Vernon) (to
be codified at Tex. Prop. Code ' 113.029)).  In
the same legislative session,  H.B. No. 2368 regarding the discretionary powers
of a trustee was enacted.   See Act of May 26, 2009, 81st Leg., R.S.,
ch. 672, ' 3, 2009 Tex. Sess. Law Serv. 1495, 1495 (Vernon) (to
be codified at Tex. Prop. Code ' 113.029)). 
Both S.B. No. 666 and H.B. No. 2368 were ultimately codified under the same
section number of the Property Code, 113.029.  We refer to H.B. No. 2368=s version of section 113.029(a), titled ADiscretionary Powers; Tax Savings.@  See id. 





[7]  Having sustained appellant=s second issue, I do not reach the remaining issues
asserting alternate grounds for characterizing the trust income as community
property and issues regarding the reliability of expert testimony and findings
of fact and conclusions of law.  See Tex. R. App. P. 47.1 (appellate
court=s opinion must address every issue Anecessary to final disposition of
the appeal@).