Hampton Carroll ROBINSON,
III, Appellant,

v.

Joann Stafford ROBINSON, Appellee.

No. 13–84–347–CV.

Court of Appeals of Texas,
Corpus Christi.

April 18, 1985.

Rehearing Denied May 23, 1985.

Richard Powell, Briscoe & Powell, Houston, Robert Anderson, Corpus Christi, for appellant.

John F. Nichols, Houston, for appellee.

Before UTTER, KENNEDY and QUENTIN KEITH,[1] JJ.

## OPINION

UTTER, Justice.

This is an appeal from a divorce decree, and the only portion of the divorce decree which is challenged on appeal is the award of monthly child support payments. We affirm the judgment of the trial court.

At trial, only three witnesses testified: appellee, Edward P. Ross, III (attorney/CPA and trustee of certain trusts) and appellee's attorney. Although represented by counsel at trial, appellant did not appear or testify at trial.

The record reflects that appellant and appellee were married in November 1979, and their only child Jennifer was born on June 13, 1980. At the time of trial, Jennifer was four years old. Appellee quit working in May 1979 shortly before the marriage and has not worked since that time; appellant does not work and has not worked since before the time of the marriage. The parties and their daughter had been financially supported by distributions of income from three funded trusts, of which appellant is a beneficiary. Of the distributions, only "about $7,500 a month" was a mandatory distribution, and the remaining distributions were discretionary distributions. Testimony and exhibits (trust tax returns) admitted at trial indicate that, during the marriage, the total annual distributions from the three trusts ranged between 300,000 and 500,000 dollars per year.

Prior to trial, appellee had been receiving $3,000.00 per month for temporary support. At trial, appellee requested that she receive the following: (1) $4,000.00 per month for child support but "would be willing to have that amount decreased when Jennifer goes to school and [appellee] goes back to work at the level at which it is presently" ($3,000.00 per month) and (2) "a lump sum of $100,000.00 for child support which

would enable [appellee] to relocate and put some money down on a house so that she can move Jennifer away from Victoria." Appellee stated that the requested periodic child support payment award represented approximately ten percent (10%) of appellant's annual net income and would be "a lot less" than the amount that is required to support "the way the other Robinson grandchild is being reared" by appellant's father. Appellee did not itemize the needs of her daughter to support the amount of the requested child support award; however, appellee was not cross-examined regarding the adequacy or excessiveness of the requested amounts. Appellee did testify that appellant wanted her "to be able to be at home with Jennifer until she starts school" ("when she is five") and that, thereafter, "it might be good for myself if I did go back to work." Appellee further testified that appellant "does not want Jennifer to live in Victoria" or "to go to school in Victoria" "[b]ecause of his bad reputation in Victoria."

There is very little testimony regarding the lifestyle of the parties and their daughter; but, appellee did give the following testimony: During the first year she knew him, appellant "bought and sold cattle"; but, since then, he has not been gainfully employed. After she quit work as a legal secretary in May, 1979, to marry appellant, she then moved from Victoria to Huntsville where she and appellant lived on his 110 acre ranch there. During the marriage, the parties owned a "number of cars" (including two Cadillac automobiles), several pickups, horses, cattle, furniture and jewelry, most of which appellant had taken away and "[p]robably" sold to support his drug habit. During the marriage, appellant "was not home very often" and had been hospitalized/institutionalized for treatment of drug related problems. The parties eventually "paid over $40,000.00" for "a double wide trailer that they lived in Missouri City." The parties separated in November 1980 because appellant's drug re-

---

1. Associate Justice (Ret.), Court of Appeals, Ninth Supreme Judicial District, sitting by designation. *See* TEX.REV.CIV.STAT.ANN. art. 1812 (Vernon Supp.1985).

lated problems "made it impossible for [appellee] to live with [appellant]."

However, there was considerable testimony given by appellee regarding the lifestyle of appellant's family, especially appellant's nephew Adam Adams, "the other Robinson grandchild." It is apparent from appellee's testimony regarding appellant's family that appellant's family is extremely wealthy. Appellant and his two brothers and one sister receive very substantial sums of money from the family's trusts.

Appellee further testified that her lifestyle was never the same as that of the other members of appellant's family, "but I think it could have been." Appellee stated that, regarding appellant, "if he had managed the money and if he had continued to buy and sell cattle and horses like he was when I met him, we would have had enough money to live exactly like the other members of the family."

Following trial, the trial court (1) granted the divorce, (2) appointed appellee as managing conservator of the child and appellant as possessory conservator of the child and (3) ordered appellant to pay child support in the amount of $4,000 per month from July 1, 1984 until September 1, 1986, then $3,000 per month until the minor child reaches eighteen years of age, the child marries, the child's disabilities for general purposes are removed or the child is otherwise emancipated, or until further order of the Court.

■ In his first point of error, appellant asserts that the trial court erred in ordering the monthly child support payment award (1) because such award "amounts to disguised alimony" to appellee in the form of child support. The divorce decree, as supported by the trial court's findings of fact and conclusions of law, clearly states that the amounts awarded are child support awards. The fact that appellee will be rearing the child, will not be working until the child starts school and, thereafter, will return to work does not necessarily mean that the award constitutes "disguised alimony". The trial court can properly consider the relative values of the non-monetary services rendered by each of the divorcing parents in determining the amount of a child support award. *Hourigan v. Hourigan*, 635 S.W.2d 556 (Tex.Civ.App.—El Paso 1981, no writ); *Krempp v. Krempp*, 590 S.W.2d 229 (Tex. Civ.App.—Ft. Worth 1979 no writ); *Hazelwood v. Jinkins*, 580 S.W.2d 33 (Tex.Civ. App.—Houston 1st Dist.1979, no writ). TEX.FAM.CODE ANN. Sec. 14.07(a) (1977), in part, provides:

The *best interest of the child* shall always be the primary consideration of the court in determining questions of managing conservatorship, possession, and *support* of and access to the child ... (Emphasis added.)

■ Unlike alimony payments, the monthly child support payments ordered will not terminate upon the death or remarriage of appellee; rather, they will only terminate upon the child's death or emancipation. Furthermore, we conclude that the decrease of the periodic payment ordered under the child support award from $4,000.00 per month to $3,000.00 per month on September 1, 1983, is reasonably based upon the child's needs and appellant's wishes, as stated in appellee's testimony that appellant wanted her "to be able to be at home with Jennifer until she starts school" and that, thereafter, "it might be good for myself if I did go back to work." Clearly, the trial court could have presumed that, when the child begins school and appellee returns to work, appellee will be in a position to better contribute financially to the child's support in addition to her contribution of nonmonetary services, which are "a very real and important part of the support of any child." *Krempp v. Krempp*, 590 S.W.2d at 231. Accordingly, we hold that the trial court's monthly child support award did not constitute an impermissible award of alimony. *See Strauss v. Strauss*, 619 S.W.2d 18 (Tex.Civ.App.—Corpus Christi 1981, no writ). Appellant's first point of error is overruled.

■ In his second point of error, appellant alleges that there is insufficient evi-

dence regarding the needs of the child to support the child support award. Even though there was no testimony regarding any particularized needs of the child to support the amount of the child support award, appellee in her testimony requested that she receive the amounts awarded for child support, thereby implying that those amounts were required for the continued support of her child. *Krempp v. Krempp*, 590 S.W.2d 229 (Tex.Civ.App.—Fort Worth 1979, no writ); *Maben v. Maben*, 574 S.W.2d 229 (Tex.Civ.App.—Fort Worth 1978, no writ). Since appellee was not cross-examined regarding the requested amounts, the requested amounts were uncontested. In addition, the trial court can take judicial notice of the anticipated increase in costs for food, shelter, clothing, and other incidentals necessary to support the minor child in the appropriate standard of living. Therefore, we hold that the trial court did not exceed its discretionary authority in ordering the requested child support award. *See Maben v. Maben*, 574 S.W.2d at 323; *See Goren v. Goren*, 531 S.W.2d 897 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd). Appellant's second point of error is overruled.

■ In his third point of error, appellant alleges that there is insufficient evidence of appellant's ability to make the required child support payments. Based upon appellant's financial history during the marriage, as presented by testimony and exhibits at trial, it is clear that the trial court found that appellant had the capability to make the ordered payments. The amount awarded for child support is approximately ten percent (10%) of a three year average of appellant's income from the trust estates. We hold that the trial court did not exceed its discretionary authority in ordering the child support award since there was sufficient evidence regarding appellant's capability to make the ordered payments. Appellant's third point of error is overruled.

■ In his fourth point of error, appellant contends that the trial court's child support award was erroneous because, as a matter of law, the ordered payments could not be ordered from the trust. We note that the child support award does not order appellant to make payments from any trust, that the trustees of the three funded trusts were not made parties to this suit and that no order has been entered by the trial court which would affect those trustees. Besides, before the trial court could have ordered pursuant to TEX.FAM.CODE ANN. § 14.05(c) (Vernon Supp.1985) that the trustees make disbursement for child support, appellant, the trust beneficiary/parent, must have first been ordered by the trial court to make the child support payment or payments. *In the Matter of the Marriage of Long*, 542 S.W.2d 712 (Tex.Civ.App.—Texarkana 1976). We hold that the trial court properly ordered appellant to make the requested child support payments without specifying that the payments be made from any trust. Appellant's fourth point of error is overruled.

The judgment of the trial court is AFFIRMED.