**WILMINGTON TRUST COMPANY, Grace Vale Asche, Vale Asche Ackerman, and Bettyanne Asche McCullough, Independent Co-Executors of the Estate of Frederic B. Asche, Deceased**

v.

**The UNITED STATES.**

**No. 371–82T.**

United States Claims Court.

Nov. 21, 1983.

Charles A. Crocker, Houston, Tex., for plaintiffs. Baker & Botts, Houston, Tex., of counsel.

W.C. Rapp, Washington, D.C., with whom was Asst. Atty. Gen., Glenn L. Archer, Jr., and Theodore D. Peyser, Washington, D.C., for defendant.

OPINION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The plaintiffs, who are the Independent Co-Executors of the Estate of Frederic B. Asche, Deceased, filed this case because of the allegedly wrongful action of the Internal Revenue Service (IRS) in requiring the plaintiffs to pay additional estate tax and assessed interest, after an audit by the IRS of the estate tax return which the plaintiffs filed following the death of Frederic B. Asche (Mr. Asche).

In the complaint,[1] the plaintiffs asked for a judgment in the amount of $590,613.53, plus statutory interest.

Subsequently, the plaintiffs conceded that, because of the applicable statute of limitations, the maximum amount which the plaintiffs may recover in this action is $462,972.95, plus statutory interest.

It is concluded that the plaintiffs are entitled to recover.

### The Facts

One of the plaintiffs, Grace Vale Asche (Mrs. Asche), is the widow of Mr. Asche. They were married in 1927 in New York, New York. In 1928, they established their domicile in Houston, Texas; and they continued to reside together in Houston until Mr. Asche died on November 21, 1976.

On August 19, 1977, the plaintiffs timely filed a United States Estate Tax Return (Form 706) for Mr. Asche's estate, and they paid the tax shown to be due thereon, in the amount of $4,880,799.52.

Following an audit, the IRS required the plaintiffs to pay additional estate tax in the amount of $443,535.07, plus interest thereon in the amount of $110,028.09. These amounts, totaling $553,563.16, were paid by the plaintiffs on November 28, 1980.

Later, the plaintiffs filed with the District Director of the IRS in Austin, Texas, a claim for the refund of the additional estate tax and assessed interest. This claim for refund was denied by the IRS on September 22, 1981.

At the time of Mr. Asche's death, certain properties that are relevant to this case were held in Mrs. Asche's name. These properties consisted of shares of common stock in six corporations, the stock having a fair market value of $222,480.25, and five bank accounts, amounting to a total of $1,522,981.70. In addition, seven trusts that are also relevant to this case had undistributed trust income in the total amount of $40,972 at the time of Mr. Asche's death. The shares of stock and the bank accounts (except for $137,503.12) had been accumulated by Mrs. Asche from income which she received over a long period of time, during

1. Filed as a petition in this court's predecessor, the United States Court of Claims.

her marriage to Mr. Asche, as the beneficiary of the seven trusts previously mentioned. The undistributed trust income had also been earned by the trusts during the marriage of Mr. and Mrs. Asche.

In preparing the estate tax return for Mr. Asche's estate, the plaintiffs were of the view that the shares of stock, the bank accounts, and the undistributed trust income previously mentioned were the separate property of Mrs. Asche. Consequently, the plaintiffs did not include any part of these items among the assets of Mr. Asche's estate.

The IRS, however, determined administratively that the income which Mrs. Asche received from the seven trusts, and the undistributed trust income earned by the trusts, during the marriage of Mr. and Mrs. Asche constituted community property of Mr. and Mrs. Asche; and, therefore, that one-half of the value of the shares of stock, one-half of the bank accounts, and one-half of the undistributed trust income should have been included among the assets of Mr. Asche's estate. It was upon the basis of this administrative determination that the plaintiffs were required to pay the additional estate tax and assessed interest previously mentioned.

Mrs. Asche was, as previously stated, the beneficiary of the seven trusts. All the trusts were created during her marriage to Mr. Asche. Each trust was established solely by gift, either *inter vivos* or testamentary, and is irrevocable. Mrs. Asche's parents were the grantors of six trusts, and Mr. Asche was the grantor of the seventh trust.

Mrs. Asche was not a grantor of any of the trusts.

Under each of the seven trusts, Mrs. Asche is entitled to receive from the trustee or trustees mandatory distributions of the net income, but she is not entitled to distributions of principal. Upon Mrs. Asche's death, the corpus of each trust passes to, or for the benefit of, one or more of her issue.

With the exception of one of the trusts, each trust contains a spendthrift provision prohibiting the assignment or alienation of Mrs. Asche's beneficial interest, or the attachment of that interest by her creditors.

### Discussion

The sole question to be decided in this case is whether the income from the seven trusts during the marriage of Mr. and Mrs. Asche constituted Mrs. Asche's separate property (as contended by the plaintiffs) or community property of Mr. and Mrs. Asche (as contended by the defendant). If it is decided that the income from the trusts was the separate property of Mrs. Asche, the plaintiffs will be entitled to recover in the present action. On the other hand, if it is decided that the trust income was community property, then the plaintiffs will not be entitled to recover, and judgment must be entered for the defendant.

The answer to the question stated in the preceding paragraph must be decided under the law of the State of Texas. Mr. and Mrs. Asche were domiciled in Texas at the time of Mr. Asche's death, as they had been for the preceding 48 years.

Texas is a community property state. Section 15 of article XVI of the Texas Constitution provides in part that "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of the wife * * *." This is supplemented by section 5.01 of the Texas Family Code Annotated (Vernon 1975), which provides as follows:

Section 5.01. Marital Property Characterized

(a) A spouse's separate property consists of:

(1) the property owned or claimed by the spouse before marriage;

(2) the property acquired by the spouse during marriage by gift, devise, or descent; and

(3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.

(b) Community property consists of the property, other than separate property,

acquired by either spouse during marriage.

In order to give an informed answer to the question before the court, it will be necessary to consider a number of pertinent Texas court cases.

Perhaps it should be stated at the outset that the general rule in Texas is that the income from a married person's separate property is not itself the separate property of such person, but, instead, is community property of the husband and wife. *Colden v. Alexander,* 141 Tex. 134, 171 S.W.2d 328, 334 (1943). Moreover, because of the constitutional provision previously quoted, the state legislature does not have the power to enact legislation providing that income from the separate property of a married woman shall be her separate property. *Arnold v. Leonard,* 114 Tex. 535, 273 S.W. 799, 803 (1925); *but cf. Graham v. Franco,* 488 S.W.2d 390, 392, 395–96 (Tex. 1972).

In *Hutchison v. Mitchell,* 39 Tex. 487 (1873), the Supreme Court of Texas had before it, apparently for the first time, the specific issue concerning the proper characterization, as separate property or community property, of income derived during marriage from a trust of which the wife was the beneficiary. The facts before the court indicated that on November 15, 1858, Dr. James Mitchell, a married man, purchased a plantation, and had the title conveyed to W.E. Douglass, as trustee, in trust "for the separate use, occupation and enjoyment of Elizabeth H. Mitchell [Dr. Mitchell's wife], free from the intervention and control of all other persons whomsoever." The trust instrument further provided: that the trustee should permit Mrs. Mitchell "to retain in her own possession and for her own separate and sole use the above described lands, free from the control, contracts or liabilities of all other persons"; that the trustee should sell, exchange, or convey the property when required to do so by the beneficiary in writing; and that the trustee should convey the legal title to Mrs. Mitchell's heirs upon her death, unless otherwise directed by her will.

The question before the court in *Hutchison* was whether the rents and profits from the trust estate were subject to the debts contracted by Dr. Mitchell, the grantor, after the creation of the trust. This question was answered by the court in the negative. The court stated in part as follows (39 Tex. at 492):

> We can find nothing in any of the constitutions or laws of the State or Republic which would prevent a married man from declaring an express trust in favor of his wife, and giving her the exclusive use and enjoyment of all the rents, issues and profits of the trust estate, provided there is no fraud in the transaction against creditors. And the only question presented for our decision in this case is, does the deed to Douglass referred to create such an estate? Douglass held the legal title to the property, for the use of Mrs. Mitchell. The language of the trust is full and explicit. It is, "For the separate use, occupation and enjoyment of the said Elizabeth H. Mitchell, free from the intervention or control of all other persons whomsoever."
>
> Had Mrs. Mitchell held this property in her own name and right, there can be no doubt but that its accumulations would have belonged to the community estate of herself and husband, and might have been subject to the execution levied upon it.

> \*    \*    \*    \*    \*    \*

The only other case cited by the parties in which the Supreme Court of Texas considered the question of the proper characterization of income to a married person from a trust created as a gift for the benefit of such person was *Martin Brown Co. v. Perrill,* 77 Tex. 199, 13 S.W. 975 (1890). That case involved a situation where Maggie Bullock Perrill, who was married to W.M. Perrill, was bequeathed, in her grandfather's will, a distributive share of the grandfather's estate. The will provided in part that "[t]he share of Maggie Bullock to be secured to her for life, with power to give it to her children, if any; if none, then to give it to any of my descendents she may

see proper." After the grandfather's death, the executor of his will transmitted to Mr. Perrill certain bonds as part of Mrs. Perrill's distributive share of the grandfather's estate. Mr. Perrill agreed to hold the property as trustee for Mrs. Perrill's benefit, and gave bond to the executor to secure the faithful administration of the trust.

The bonds were subsequently sold, and the proceeds were loaned to the partnership of Perrill & Fox, of which Mr. Perrill was a partner. The borrowers executed a promissory note, in which the principal and interest due on the loan were payable to "W.M. Perrill, trustee for his wife."

Later, Mrs. Perrill brought suit against the partners to recover the amount due on the promissory note mentioned in the preceding paragraph. She caused a writ of attachment to issue and to be levied upon a stock of goods belonging to the partners. The goods were sold as perishable property, and the proceeds were paid into court to await the determination of the suit. Certain other creditors of Perrill & Fox also brought suits on their debts, and caused attachments to be issued and to be levied upon the stock of goods attached by Mrs. Perrill. The other creditors also intervened in the suit brought by Mrs. Perrill, alleging that her attachment was in fraud of their rights and praying that the fund paid into court as the proceeds of the sale of the goods attached be appropriated to the payment of their demands.

The creditors of Perrill & Fox contended that the interest due on the promissory note from the partnership to Mrs. Perrill was community property of Mr. and Mrs. Perrill, that the interest was subject to the payment of Mr. Perrill's debts, and, therefore, that there should have been no recovery by Mrs. Perrill for the interest as against Mr. Perrill's creditors. The court (13 S.W. at 977) rejected this contention and held that the interest was not community property. The court was not in agreement, however, as to the rationale of the determination. The court said (*id.*):

> * * * As to the grounds of that conclusion, we are not in accord. One opinion is

that it is the income, and not the *corpus,* of the fund that was bequeathed to the plaintiff by her grandfather, and that, therefore, the interest on the money comes literally within the definition of "separate property," as given in the statute; that is to say, that the income of the fund is acquired directly "by devise." Rev.St. art. 2851. The other opinion is that when the husband borrows the money of the wife, and agrees to pay her interest, the effect of the contract is to make the interest her separate property. *Hall v. Hall,* 52 Tex. 294. When the note was given upon which the suit was brought, the debts due to intervenors did not exist, so that the immediate rights of creditors are not involved in the question. [Emphasis in original.]

The intermediate appellate courts in the Texas judicial system have considered in a number of cases the question of whether income during marriage from a trust of which a married person is the beneficiary constitutes the separate property of such person or community property.

One of the earliest cases, *Shepflin v. Small,* 4 Tex.Civ.App. 493, 23 S.W. 432 (1893), involved an interesting situation where Louisa Ullman, the wife of Maurice Ullman, owned realty as her separate property. The realty was occupied by a man named Small, as the tenant of Mrs. Ullman. Shepflin and others obtained a judgment against Maurice Ullman; and they instituted garnishment proceedings against Mr. Small to garnish rents due on Mrs. Ullman's property. Mrs. Ullman thereupon conveyed her separate realty to one Sidney Ullman, as trustee, in trust to collect the rents and appropriate the same to the support and maintenance of Mrs. Ullman and to the education and maintenance of her children.

The question before the Texas Court of Civil Appeals in *Shepflin* was whether the rents were subject to garnishment in satisfaction of Maurice Ullman's debts. The court held (23 S.W. at 433) that the rents from Mrs. Ullman's realty were community property, and subject to Maurice Ullman's debts, up to the time of the execution of the

trust deed conveying the property to Sidney Ullman; but that, after the establishment of the trust, the rents from the trust property were Mrs. Ullman's separate property and no longer subject to the writ of garnishment. The court stated in part as follows (*id.*):

> * * * We see no objection * * * to the wife's separate land being conveyed to a trustee for the purpose of applying the rents and revenues to her support or to any other lawful purpose. The right to convey the separate lands would necessarily include the power to convey them for specific purposes lawful in their nature. We therefore are of the opinion that the conveyance to Sidney Ullman in trust had the effect of withdrawing the rents from the community estate * * *.

A position different from that stated in *Shepflin* with respect to income during marriage from a self-created trust was seemingly taken many years later in *Mercantile National Bank at Dallas v. Wilson*, 279 S.W.2d 650 (Tex.Civ.App.—Dallas 1955), *writ refused*. In the latter case, the father of a single woman named Roberta Ray transferred certain bonds to her. She later executed a trust instrument appointing her father during his lifetime (and, if he should die, the mother as long as she should live) "as Trustee to keep said bonds for me * * * [and] to collect the revenues due on and derived therefrom and to reinvest the same as he thinks best, or to expend the same for my use and benefit * * *." Roberta Ray married George O. Wilson. As time passed, there were numerous changes in the corpus of the trust estate through sales of securities, purchase of other securities, etc., as well as payments of trust income to Roberta Ray Wilson. Mr. Wilson executed a promissory note payable to the Mercantile National Bank at Dallas; he subsequently died; and at the time of his death his estate was indebted to the bank on the note. The bank brought suit against Roberta Ray Wilson, individually and as the sole legatee and independent executrix under Mr. Wilson's will. The question before the court was whether the income from the trust estate which had accrued during the marriage, and the assets purchased with such income, constituted community property.

Although the court in *Mercantile Bank* said (279 S.W.2d at 654) that the income from the trust corpus was community property from the date of Roberta Ray's marriage to George O. Wilson until the time of Mr. Wilson's death, the court held that the trust income was not subject to Mr. Wilson's debts because of article 4616 of the Texas statutes, which exempted rents, interest, dividends, etc., on a wife's separate property from the payment of debts contracted by the husband. Thus, the result in *Mercantile Bank* was the same as that reached in *Shepflin*.

It should be noted that the trust in *Mercantile Bank* was not only established for the benefit of the grantor herself, but also that the trust would terminate upon the death of the grantor's father and mother, and, accordingly, the grantor had an expectation of recapturing the corpus of the trust during her lifetime.

Other decisions by Texas intermediate appellate courts, when considered in connection with the decisions by the Supreme Court of Texas previously mentioned, make it plain that, under Texas law, income to a married person as the beneficiary of a trust established by someone else as a gift, either *inter vivos* or testamentary, is the separate property of the married beneficiary. A frequently cited case on this point is *McClelland v. McClelland*, 37 S.W. 350 (Tex.Civ. App.1896), *writ refused*. There, the father of Peter McClelland, Jr., left certain rent-bearing real estate to trustees in trust for the son, with directions that only monthly amounts were to be turned over to the son for his support and maintenance. The son married; and later this case arose when the son and his wife were in the process of being divorced. The wife claimed in the divorce action that the rents which had been accumulated from the trust property during the marriage constituted community property, and that she was entitled to half of the accumulated amount.

The court in *McClelland* reasoned (37 S.W. at 359) that it was the income from the trust property, rather than the trust property itself, which the father's will devised to Peter McClelland, Jr.; and that, as the income was received by devise, the rent was the son's separate property, in which the wife had no community interest.

*Buckler v. Buckler,* 424 S.W.2d 514 (Tex. App.App.—Ft. Worth 1967), *writ dismissed,* involved a problem similar to that in *McClelland.* The question before the court in *Buckler* was whether the wife, in a divorce proceeding, was entitled to have considered as community property the undistributed income that had accumulated during the marriage in certain spendthrift trusts that had been created for the benefit of the husband. The court held that the income from the trusts was not community property, stating (414 S.W.2d at 516) that "the terms and provisions of the trust created in behalf of appellee Buckler [the husband] so restricted and defined his rights and interest as to exclude his entitlement to undistributed income which the trustees had not seen fit to deliver to him."

The decisions by the Texas Supreme Court and by Texas intermediate appellate courts, holding that income to a married person from a trust created as a gift for the benefit of such person constituted the separate property of the beneficiary, and not community property, involved situations where the married beneficiary of a trust did not have any right to take over the corpus of the trust itself. On the other hand, if the trust instrument gives the married beneficiary the right, after the passage of years, to take over the corpus of the trust (or part of it), then it is held that, irrespective of whether the beneficiary exercises such right at the permitted time, income thereafter from the corpus (or pertinent part) ceases to be separate property and, instead, becomes community property of the husband and wife. *In re Long* 542 S.W.2d 712, 718 (Tex.Civ.App.—Texarkana 1976).

Although it did not involve the same issue that is before this court in the present case, the decision by the Supreme Court of Texas in *Herring v. Blakeley,* 385 S.W.2d 843 (Tex.1965), perhaps should be mentioned. In that case, James E. Herring, while married, became a qualified participant in a profit-sharing plan and trust agreement established and maintained for employees of the company where he worked, and he also became the holder of an annuity certificate issued by an insurance company under a group insurance plan arranged for employees by the employer. The employees did not have to contribute any funds under the profit-sharing plan, but funds for the purchase of annuity certificates were contributed in part by employees and in part by the employer.

Under both of these plans, Mr. Herring had the unrestricted right to designate a beneficiary to receive certain death benefits if he should die while still employed by the company, and he could change the beneficiary at will.

While he was still employed, Mr. Herring and his wife were divorced. Soon thereafter, he changed the beneficiary under the two plans previously mentioned, from his former wife to James Alex Blakeley, trustee, for the benefit of the Herrings' minor children. Mr. Herring died some 10 months after the divorce. Mr. Blakeley, as trustee, instituted a suit for a declaratory judgment declaring that the death benefits payable under the two plans were not community property of Mr. and Mrs. Herring, but that he was entitled to the benefits of both plans as the beneficiary of Mr. Herring.

In disposing of the case, the court's line of reasoning (385 S.W.2d at 845–46) was as follows: inasmuch as the plans provided that if Mr. Herring's employment were to be terminated, either voluntarily or involuntarily, before his death, he would be entitled to the full sum credited to his profit-sharing account and to the value of his annuity certificate, he had an interest in each plan during his lifetime, and such interest constituted "property"; that as the interest in each plan was acquired during the marriage, the interest was "vested" in Mr. Herring as of the time of the divorce;

that as the interest was part of Mr. Herring's compensation earned during the marriage, and was not acquired by gift, devise, or descent, it was necessarily community property of Mr. and Mrs. Herring; and, therefore, that Mrs. Herring's interest in the two plans as of the date of the divorce.

The result in *Herring* does not provide support for the defendant's position in the present case. The funds which accumulated to Mr. Herring's credit under the two plans during his marriage could not have been his separate property under section 5.01(a) of the Texas Family Code Annotated, previously quoted, because such funds (1) were not owned or claimed by him before marriage, (2) were not acquired by him during marriage by gift, devise, or descent, and (3) did not represent a recovery for personal injuries sustained during marriage. Consequently, the funds accumulated during marriage were necessarily community property under section 5.01(b).

The defendant places reliance on decisions by the United States Court of Appeals for the Fifth Circuit in income tax cases which arose in Texas and which involved trust income to married persons.

One of the Fifth Circuit cases was *Commissioner v. Wilson*, 76 F.2d 766 (5th Cir. 1935). That case involved income from property which had been conveyed by trust deed to a trustee for the use and benefit of 27 beneficiaries. The beneficiaries were to get the net income from the trust property each year and also the proceeds of any property that might be sold during the year. The specific income involved in the case consisted of lease rentals for deferred drilling on oil and gas properties and the proceeds of royalty oil sold. The Internal Revenue Service contended before the court that such income constituted the separate property of each beneficiary for income tax purposes, while the beneficiaries involved in the litigation, who were married men, contended that the income constituted community property for income tax purposes.

The court held in *Wilson* (76 F.2d at 769) that the lease rentals received by each beneficiary constituted the separate property of such person, but that the proceeds of royalty oil sold constituted the separate property of each beneficiary, because the royalty oil was part of the corpus and, having been acquired by gift, it was separate property. The court stated in part as follows (*id.*):

It is argued that the result should be otherwise because the husbands [beneficiaries] do not get the revenue directly from the property but through the hands of the trustee and subject to the expenditures which he is authorized to make. But the trustee is bound to act always for the benefit of the beneficiaries and to divide the net results among them. All net income and corpus ultimately go to them. The beneficiaries receive the income as income. The corpus is theirs in equity, the legal title being conveyed to the trustee expressly for their benefit. * * * Income accruing from the separate equitable estates of the husbands during the marriage though collected and paid over by a trustee belongs to their respective communities.

Another Fifth Circuit case relied on by the defendant is *Commissioner v. Porter*, 148 F.2d 566 (5th Cir.1945). It involved trust income received by married women who were sisters living in Texas. They were the beneficiaries, during their lives, of trusts of personal property (stocks and bonds) which had been established by their father. For the tax years that were involved in the case, the taxpayers returned, as community property, dividends and interest which had been distributed to them by the trustees. The question before the court was whether such income constituted community property, as contended by the taxpayers, or separate property, as contended by the Internal Revenue Service.

The court in *Porter* (148 F.2d at 568) referred to "the generally prevailing rule in Texas, that income from separate property falls when received into the community," and then stated in part as follows (*id.* at 568–69):

* * * What he [the grantor-father] intended to effect * * * was to protect the

corpus of, and the undistributed income from, the property as well from the improvidence, as from the incompetence, of his daughters. As long as the income was in the hands of the trustees and undistributed it was protected, but as soon as it was paid over, it passed to the daughters as their property, freely and completely alienable * * *. We think it entirely plain that when they received the income it fell into the community.

It appears that the Fifth Circuit, in the two decisions previously mentioned, failed to analyze properly the community property law of Texas, as it has been developed by the Texas courts. It is true, as stated by the Fifth Circuit in *Porter* (148 F.2d at 568), that the generally prevailing rule in Texas is "that income *from separate property* falls when received into the community" (emphasis supplied), but the court in both cases seemingly overlooked the circumstance that the income involved in each case was "from" a trust corpus, and the trust corpus was not the "separate property" of the beneficiaries of the trust. The beneficiaries had no right to or control over the corpus of the trust. Those powers were vested in the trustee.

■ It is concluded that, under the law of Texas, as developed and expounded by the Texas courts, the income derived during the marriage of Mr. and Mrs. Ashe from the seven trusts that are involved in the present case constituted the separate property of Mrs. Ashe, and was not community property of Mr. and Mrs. Asche. Mrs. Asche never "acquired"—and she will never acquire—the corpus of any of these trusts. The corpus of each trust is to be held and controlled by the trustee or trustees during Mrs. Asche's lifetime, and, upon Mrs. Asche's death, the corpus will pass to her issue. Accordingly, the corpus of each trust was not Mrs. Asche's separate property, and the trust income was not from Mrs. Asche's separate property.

What Mrs. Asche "acquired"—and what she used to purchase the stocks and establish the bank accounts that are involved in the litigation—was the income from the trust property. As the income resulted from gifts made to trustees for Mrs. Asche's benefit, the income necessarily constituted her separate property under section 15 of article XVI of the Texas Constitution.

As the trust income, whether distributed or undistributed, was Mrs. Asche's separate property, it was not necessary for the executors of Mr. Asche's estate to include in the estate tax return any part of the undistributed income or of the property which Mrs. Asche acquired with the previously distributed income.

For the reasons stated in the opinion, the plaintiffs are entitled to recover.

### Conclusion

The court concludes, upon the basis of the parties' submissions before the court, that there is no genuine issue as to any material fact, and that the plaintiffs are entitled to a judgment as a matter of law.

The plaintiffs' motion for summary judgment is therefore granted, and the defendant's cross-motion for summary judgment is denied.

The amount of the plaintiffs' recovery will be determined in subsequent proceedings under Rule 42(c).

IT IS SO ORDERED.