Appellant=s Motion for Rehearing Granted; Affirmed in Part,
Reversed and Remanded in Part; Majority and Dissenting Opinions of December 31,
2008, Withdrawn; Majority Opinion on Rehearing filed October 8, 2009;
Concurring Opinion on Rehearing to Follow.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00717-CV

____________

 

TIMOTHY L. SHARMA, Appellant

 

V.

 

LISA C. ROUTH, Appellee

 



 

On Appeal from the 246th District Court

Harris  County, Texas

Trial Court Cause No. 04-61264

 



 

 M A J O R I T Y   O P I N I O N   O N   R E H E A R I N G

Appellant Timothy L. Sharma=s motion for
rehearing is granted.  The majority and dissenting opinions issued in this case
on December 31, 2008, are withdrawn, and this Majority Opinion on Rehearing is
issued today, with a concurring opinion by Chief Justice Hedges to follow.








                                               I.  Introduction

This is an appeal from a divorce decree in
which the husband asserts that the trial court reversibly erred by
characterizing income distributions he received from two testamentary trusts as
community property and awarding half of those distributions to his wife, rather
than awarding all of the distributions to him as his separate property.  In the
context of a spouse who receives distributions of trust income under an
irrevocable trust during marriage, case law indicates that the income distributions are community
property if the receiving spouse owns the trust corpus but that the
distributions are separate property if the receiving spouse does not own the
trust corpus.  Neither the Supreme Court of Texas nor this court has decided
what the legal standard should be for determining whether the receiving spouse
owns the trust corpus.  We hold that, when a spouse receives distributions of
trust income under an irrevocable trust during marriage, the income
distributions are community property only if the recipient has a present
possessory right to part of the corpus.  The trial evidence conclusively proved
that the husband did not have such a right and that the distributions in
question were separate property to which the husband acquired title by devise
or gift during the marriage.  Although we affirm the trial court=s grant of divorce
and dissolution of the marriage, based on the trial court=s reversible error
in awarding the wife substantial amounts of the husband=s separate
property, we sever and reverse the remainder of the judgment and remand for
further proceedings.

                      II.  Factual and Procedural Background[1]








Appellant Timothy L. Sharma and appellee
Lisa C. Routh were married in August 2004.[2] 
A few months later, Timothy filed for divorce.  Soon thereafter, the couple
separated and ceased living together as husband and wife.  After a lengthy
bench trial, in January 2006, the trial court signed a decree ending the
parties= brief marriage.

                   Husband=s Prior Marriage
and Rights to Trust Property

Before his marriage to Lisa, Timothy was
married to Alice Hiniker Sharma from 1982 until Alice=s death in 2001. 
Under Alice=s will, two trusts were created:  the Alice Hiniker
Sharma Marital Trust (hereinafter AMarital Trust@) and the Alice
Hiniker Sharma Family Trust (hereinafter AFamily Trust@).  Timothy is the
trustee of both the Marital Trust and the Family Trust.  Alice=s will requires
that the net income of the Marital Trust be distributed to Timothy at least
quarterly.  Likewise, under certain circumstances and to a specified extent,
the trustee of the Family Trust is required to distribute to Timothy income or
principal from the Family Trust.  

While married to Alice, Timothy, who is a
psychiatrist, built up and developed psychiatric hospitals in the Houston
area.  In 2002, the Marital Trust was initially funded with two psychiatric
hospitals, realty, and shares of common stock in Cambridge International, Inc. (AInternational@), with a total stated value of more than
$39 million.  The Family Trust was initially funded only with shares of
International common stock.  








In 2003, Timothy, as trustee of the
Marital Trust, sold the realty and improvements for the two hospitals to a
nonprofit organization now known as the Cambridge Health Foundation[3]
(hereinafter ACambridge Foundation@) in exchange for
a promissory note in the original principal amount of $30,115,000 (hereinafter ABuilding Note@).  As a result of
its ownership of International stock, the Marital Trust also received a
promissory note in the original principal amount of $3,952,680.10, executed by
Intracare Hospital (hereinafter AIntracare Note@).  As a result of
its ownership of International stock, the Family Trust received a promissory
note in the original principal amount of $739,601.22, executed by Intracare
Hospital (hereinafter AFamily Trust Note@).  Following a
complex set of transactions in December 2003, two nonprofit organizations,
Intracare Hospital and Intracare North Hospital, began operating the two
psychiatric hospitals.  The Cambridge Foundation owned the land and buildings
for these two hospitals.  

The Building Note, the Intracare Note, and
the Family Trust Note (hereinafter collectively the ANotes@) all provide for
periodic payments of principal and interest.  The interest portion of the
payments on the Building Note and the Intracare Note is income to the Marital
Trust, which, under Alice=s will, must be distributed to Timothy. 
The record  reflects that Timothy also received distributions of income from
the Family Trust.  However, at all material times since the execution of the
Notes on December 31, 2003, Timothy has donated the income distributions from
both trusts to the Cambridge Foundation without taking actual receipt of any
money.[4] 
Timothy reported these distributions as income on his personal income tax
return and claimed a charitable deduction for his donation of these
distributions.  The record contains no evidence that Timothy received
distributions of trust corpus from the Marital Trust or the Family Trust.[5]









                                           Trial
Court Proceedings

         After a lengthy bench trial involving
extensive testimony and trial exhibits, the trial judge signed an order on
January 26, 2006.  In this order, the trial court granted the parties a divorce
and, among other things, made the following determinations:

!       The Marital Trust is Timothy=s separate property.

!       Because interest received on
separate property is community property,  the interest on the corpus of the
Marital Trust is community property.

!       Lisa is entitled to fifty
percent of the interest that accrued on the Building Note and the Intracare
Note during the marriageCfrom August 29, 2004 through
January 26, 2006.  

In the order the trial court did not
specifically mention the Family Trust, but it indicated that it also was
awarding Lisa half of the interest that accrued on the Family Trust Note during
the marriage.  This order did not contain all the necessary information for a
property division and a final decree.  Therefore, further proceedings in the
trial court were required.  Following these proceedings, Timothy and Lisa
agreed that, from the date of their marriage (August 29, 2004)  through the
date of their divorce (January 26, 2006), $2,096,067 in interest accrued on the
Building Note and $175,996 in interest accrued on the Intracare Note.  The sum
of these two amounts is $2,272,063 (hereinafter collectively AMarital Trust
Income@).  The parties
also agreed that, during the same period, $32,955 in interest accrued on the
Family Trust Note (hereinafter AFamily Trust Income@).  








The trial court signed a final decree and
then issued findings of fact and conclusions of law.  The trial court found
that a just and right division of the community estate having due regard for
each party=s rights would be to award each party fifty percent of
the community estate.  The trial court determined that the total community
estate, including the Marital Trust Income and the Family Trust Income, had a
value of $3,872,924.23.  The trial court awarded Lisa one-half of this amount
to equalize the division of the estate.  The trial court rendered judgment in
favor of Lisa and against Timothy in the amount of $1,936,462.12, plus
interest.  In addition, the trial court ordered that this judgment be secured
by an equitable lien against all of Timothy=s separate
property and against Timothy=s half of the community estate.  The trial
court denied all parties= claims for reimbursement or economic
contribution.[6]

                                        III.  Issues and Analysis

On appeal, Timothy challenges the trial
court=s property
division, asserting, among other things, that the trial court erred by
characterizing the Marital Trust Income and the Family Trust Income as
community property rather than as Timothy=s separate
property.  Timothy asserts that this income is his separate property because he
acquired it by devise or gift, and that the trial court erred by awarding half
of this income to Lisa.








In a divorce decree, the trial court Ashall order a
division of the estate of the parties in a manner that the court deems just and
right, having due regard for the rights of each party and any children of the
marriage.@  Tex. Fam.
Code Ann. ' 7.001 (Vernon 2006).  To convince this
court to disturb the trial court=s division of
property, Timothy must show the trial court clearly abused its discretion by a
division or an order that is manifestly unjust and unfair.  See Stavinoha v.
Stavinoha, 126 S.W.3d 604, 607 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  Under this standard, the legal and factual sufficiency
of the evidence are not independent grounds of error, but they are relevant
factors in assessing whether the trial court abused its discretion.  Id.
at 608.  If the trial court mischaracterizes a spouse=s separate
property as community property and awards some of the property to the other
spouse, then the trial court abuses its discretion and reversibly errs.  See
Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 142 (Tex. 1977); Gana v. Gana, No.
14-05-0060-CV, 2007 WL 1191904, at *4 (Tex. App.CHouston [14th
Dist.] Apr. 24, 2007, no pet.) (mem. op.).  

All property possessed by either spouse
during or on dissolution of marriage is presumed to be community property.  Tex. Fam. Code  Ann. ' 3.003(a) (Vernon
2006).  The burden of overcoming this presumption is on the party asserting
otherwise, and the standard of proof is by clear and convincing evidence.  Id.
' 3.003(b).  AClear and
convincing@ evidence means the measure or degree of proof that
will produce in the mind of the trier of fact a firm belief or conviction as to
the truth of the allegations sought to be established.  In re J.F.C., 96
S.W.3d 256, 264 (Tex. 2002).  Whether property is separate or community is
determined by its character at the inception of the party=s title.  Barnett
v. Barnett, 67 S.W.3d 107, 111 (Tex. 2001).  Inception of title occurs when
a party first has a right of claim to the property by virtue of which title is
finally vested.  Smith v. Smith, 22 S.W.3d 140, 145 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).

In the Texas Constitution, the people of
Texas have proclaimed:

All property, both real and
personal, of a spouse owned or claimed before marriage, and that acquired
afterward by gift, devise or descent, shall be the separate property of that
spouse; and laws shall be passed more clearly defining the rights of the
spouses, in relation to separate and community property . . . .








Tex. Const. art. XVI, ' 15.  In the Texas
Family Code, the legislature restates this definition of Aseparate property@ from the Texas
Constitution, and it then states that Acommunity property
consists of the property, other than separate property, acquired by either
spouse during marriage.@  See Tex. Fam. Code ' 3.002 (Vernon
2006).  In interpreting the Texas Constitution, Texas courts rely heavily on
the literal text and must give effect to its plain language.  Republican
Party of Texas v. Dietz, 940 S.W.2d 86, 89 (Tex.1997);  Arnold v.
Leonard, 273 S.W. 799, 801B03 (Tex. 1925) (stating that a court=s duty is to give
effect to the will of the people of Texas, as expressed by the plain meaning of
the Texas Constitution).  Basing its analysis on the plain meaning of the
constitutional text, the Supreme Court of Texas has reasoned that, as to
property a spouse acquires during marriage, if the spouse acquires the property
by gift, devise, or descent, then the property belongs to the spouse=s separate estate,
but if the property is acquired in any other manner, then the property belongs
to the community estate.  See Arnold, 273 S.W. at 801B03.  Decades ago
in Arnold, our high court concluded that rents and revenues acquired
during marriage based on a spouse=s ownership of
separate realty were not acquired by gift, devise, or descent and therefore
were community property.  See id.  The Arnold court held
unconstitutional a statute in which the legislature attempted to make such
property part of the spouse=s separate estate.  See id. at 803B05.  The high
court indicated that rents and revenues were acquired at the time they came
into existence rather than when a spouse received the property that generated
the rents and revenues.  See id.  The Arnold case did not involve
trust income or a devise or gift of income.  See id.  

Does the evidence prove, as a matter of
law, that the husband acquired the marital trust income by devise or gift so
that this income is his separate property? 

Under the unambiguous language of Alice=s will, Alice
required the trustee of the Marital Trust to distribute the Marital Trust
Income to Timothy.[7] 
A devise is Athe act of giving property by will.@  Black=s Law Dictionary 483 (8th ed. 2004).  Timothy
acquired the Marital Trust Income because in Alice=s will she
required that it be distributed to him.  Under the unambiguous meaning of Aacquired . . . by
. . . devise@ and under the unambiguous language of Alice=s will, Timothy
acquired the Marital Trust Income by devise.  








Courts have held that distributions from
testamentary or inter vivos trusts to married recipients who have no right to
the trust corpus are the separate property of the recipient because these
distributions are received by gift or devise.[8]
See Cleaver v. Cleaver, 935 S.W.2d 491, 492B94 (Tex. App.CTyler 1996, no
pet.); Wilmington Trust Co. v. United States, 4 Cl. Ct. 6, 14 (1983)
(applying Texas law), aff=d, 753 F.2d 1055
(Fed. Cir. 1985).  However, though the Arnold case did not involve trust
income or a devise or gift of income, the Arnold court suggested that,
if a spouse owns the property that generates income during the marriage, then
the income results from the ownership of the property rather than any gift or
devise that may have bestowed the income-generating property on the spouse in
the past.  See Arnold, 273 S.W. at 803B05.  Consequently,
for the Marital Trust Income to constitute separate property, it appears that
Timothy must not have owned the property that generated the income.  See id. 
In the context of a distribution of trust income under an irrevocable trust during
marriage, there are at least four possible rules that could be adopted:

(a)     Income
distributions are always community property, even if the recipient has no right
to the corpus of the trust, because the recipient=s right to receive the income means that the
recipient is a trust beneficiary and effectively an owner of the trust corpus
(hereinafter ARule A@).[9]








(b)     Income
distributions are community property only if the recipient has some potential
right to the corpus, even if the right has not yet become a possessory right,
because the recipient=s potential right to access the
corpus means that the recipient is effectively an owner of the trust corpus
(hereinafter ARule B@).

(c)     Income
distributions are community property only if the recipient has a present
possessory right to part of the corpus, even if the recipient has chosen not to
exercise that right, because the recipient=s possessory right to access the corpus means that the
recipient is effectively an owner of the trust corpus (hereinafter ARule C@).[10]

(d)     Income distributions are community property only if
the recipient has exercised a possessory right to part of the corpus, because
the recipient=s exercise of this possessory right means that the
recipient is effectively an owner of the trust corpus (hereinafter ARule D@).[11]

Because there are no decisions by the Supreme Court of
Texas or this court that specifically address this issue, we must determine
which rule to apply.[12]









Texas courts have addressed similar issues
using a variety of approaches.  In Ridgell v. Ridgell, the court addressed the
characterization of mandatory income distributions to the wife from two
testamentary trusts.  See 960 S.W.2d 144, 147B50 (Tex. App.CCorpus Christi 1997, no pet.).  The Ridgell
court stated that trust income received by a married beneficiary is community
property if the receiving spouse Ais entitled, or becomes entitled@ to distributions of trust corpus.  Id.
at 148.  In Ridgell, the wife received mandatory distributions of trust
income, and, in addition, the testamentary trusts mandated that the trustee
make annual distributions of trust corpus to the wife during the first eleven
years of the marriage.  See id. at 146B50.  As to the trusts in question, the
wife either had received
mandatory distributions of corpus or had a present possessory right to receive
mandatory distributions of corpus.  See id. at 147B50.  The Ridgell court held that
the income distributions from the two testamentary trusts to the wife were
community property, using an analysis that supports Rule C.  See id.  








In McClelland v. McClelland, the husband was a
beneficiary under his father=s testamentary trust.  37 S.W. 350, 354B56 (Tex. Civ. App. 1896, writ ref=d). Upon the husband=s death, the trust would end and the
assets would be distributed to the father=s heirs at law. Though he had no
interest in the remainder of the trust, the husband was entitled to a mandatory
monthly distribution of $100 while he was unmarried and $150 while he was
married.  See id.  In addition, if the trustee determined that the
husband was Aprovident and careful,@ then the trustee had discretion to make additional
distributions to the husband.  See id. at 356. The trustee did not make
any discretionary distributions to the husband, but the trustee did make the
monthly distributions of $150 during marriage.  See id. at 357.  In McClelland,
the trial court granted the wife a divorce from the husband and ruled that, as
a matter of law, all trust income that had accrued during marriage was
community property.  See id. at 358.  The court of appeals concluded
that (1) this income was separate property as a matter of law, and (2) except
as to the monthly distributions, the husband had no possessory right to access
the income on the trust corpus and therefore, the husband had not acquired this
property during marriage.  See id. at 358B59.  As to the monthly distributions
that the husband acquired during marriage, the court of appeals concluded that
these distributions were the husband=s separate property because he
acquired them by devise.[13]  See id. 
The McClelland case supports Rule C and is contrary to Rule A and Rule
B.[14]

Various other courts of appeals have indicated disapproval of
Rule D and have concluded that, if a spouse has a present possessory right to
trust corpus or income but the spouse elects not to receive it, then that
spouse should be treated as having acquired title to the corpus or income as
separate property to the extent the spouse is entitled to receive it.  See
Cleaver, 935 S.W.2d at 492B94; In re Marriage of Long, 542 S.W.2d 712, 717B18 (Tex. Civ. App.CTexarkana 1976, no writ).  We agree with
these courts and reject Rule D.








Upon consideration of the plain meaning of
article XVI, section 15 of the Texas Constitution (ASection 15@) and of the
applicable sections of the Family Code, as well as the cases discussed above,
we adopt Rule C.[15]   
We conclude that, in the context of a distribution of trust income under an
irrevocable trust during marriage, income distributions are community property
only if the recipient has a present possessory right to part of the corpus,
even if the recipient has chosen not to exercise that right, because the
recipient=s possessory right to access the corpus means that the
recipient is effectively an owner of the trust corpus.[16]


The unambiguous language of Alice=s will and the
trial evidence prove the following as a matter of law:

!       The Marital Trust is an
irrevocable, testamentary trust. 

!       The trustee of the Marital
Trust must distribute the income on the corpus of the Marital Trust to Timothy,
at least quarterly.   

!       Under Alice=s will, Timothy has no interest in
the remainder of the Marital Trust, which expires upon his death.[17]

!       The only potential right
that Timothy has to access the corpus of the Marital Trust is the will=s requirement that the trustee of
the Marital Trust Adistribute such amounts of trust
principal to [Timothy] as are necessary, when added to the funds reasonably
available to [Timothy] from all other sources known to [the trustee] (excluding
the Article VI trust property), to provide for [Timothy=s] health, support and maintenance
in order to maintain him, to the extent reasonably possible, in accordance with
the standard of living to which [Timothy] is accustomed at the time of [Alice=s] death@ (hereinafter ASupport Provision@).








!       At the time the trial court
granted divorce on January 26, 2006, Timothy had not received any distributions
of any part of the corpus of the Marital Trust.

!       At no time during his marriage to
Lisa did Timothy have a present possessory right to any part of the corpus of
the Marital Trust.








Under the unambiguous meaning of Section 15 and of Alice=s will, Timothy
acquired the Marital Trust Income by devise or gift.[18]
 See Arnold, 273 S.W. at 801B03; McClelland,  37 S.W. at 358B59; Black=s Law Dictionary 483 (8th ed.
2004).  Based on the unambiguous language of Alice=s will, Timothy
would have a present possessory right to receive distributions of corpus only
if he, as trustee of the Marital Trust, determined that such distributions were
necessary for his maintenance under the Support Provision.  The record contains
no evidence that Timothy ever made such a determination or that he ever was
entitled to receive distributions of trust corpus from the Marital Trust.  Because
Timothy had no present, possessory right to any part of the Marital Trust
corpus, Timothy was not effectively an owner of the trust corpus during his
marriage to Lisa, and the Marital Trust Income, as a matter of law, is not
community property.[19] 
See McClelland,  37 S.W. at 358B59. 

Lisa argues that, if an income beneficiary is also the
trustee, then, because the trustee holds legal title and right to control the
trust corpus, the trustee/beneficiary must be deemed the owner of the trust
corpus for purposes of characterizing the trust income.  Lisa cites language
from the Wilmington Trust Co. case, in which the court states that the
income beneficiary was not the trustee and therefore lacked the right to
possess and control the trust corpus.  See Wilmington Trust Co.,
4 Cl. Ct. at 14.  The Wilmington Trust Co. court noted that the income
beneficiary was not the trustee; however, the court, in concluding that the
income distributions were separate property, also noted and strongly emphasized
that the income beneficiary had no right to access the trust corpus.  See id.
at 8B14.  The Wilmington Trust Co.
court did not need to decide whether an income beneficiary=s service as trustee would be a
controlling factor in the marital-property characterization of the trust
income.[20]








In her trial court pleadings, Lisa did not allege, and Lisa
does not assert on appeal, that the trusts were created, funded, or operated in
fraud of her rights, nor has she pleaded that the trusts should be disregarded
or that the trusts are Timothy=s alter egos.[21]  See
Lemke v. Lemke, 929 S.W.2d 662, 664 (Tex. App.CFort Worth 1996, writ denied). 
Timothy may serve as trustee even though he is one of the beneficiaries under
the trusts.  See Tex. Prop. Code
Ann. ' 112.008(b) (Vernon 2006).  However, Timothy, as trustee of the trusts,
holds bare legal title and the right to possession of trust assets.  Burns
v. Miller, Hiersche, Martens & Hayward, P.C., 948 S.W.2d 317, 322 (Tex.
App.CDallas 1997, writ denied). 
Therefore, the fact that an income beneficiary also holds legal title to the
corpus in his capacity as trustee should not be a controlling factor in the
marital-property characterization of the trust income.[22]









For the foregoing reasons, the trial court reversibly erred
in characterizing the Marital Trust Income as community property rather than
Timothy=s separate property and by awarding
part of this property to Lisa.[23]   See Eggemeyer,
554 S.W.2d at 142; Gana, 2007 WL 1191904126, at *4.

Does the evidence prove, as a matter of
law, that the husband acquired the family trust income by devise or gift so
that this income is his separate property? 

The trial evidence shows that Timothy also
received distributions of income from the Family Trust.  These distributions
were significantly smaller than the income distributions from the Marital
Trust.  The record contains no evidence that trust corpus was distributed.[24]
The trial court concluded that $32,955 in community property was attributable
to income from the Family Trust Note.  Timothy asserts that the trial court
erred as matter of law and should have characterized this income as his
separate property.  The unambiguous language of Alice=s will and the
trial evidence prove the following as a matter of law:

!       The Family Trust is an
irrevocable, testamentary trust. 

!       Under Alice=s will, Timothy has no interest in
the remainder of the Family Trust, which expires upon his death.[25]









!       The only potential right
that Timothy has to access the corpus of the Marital Trust is the will=s requirement that the trustee of
the Family Trust distribute such amounts of income and principal as shall be
necessary for Timothy=s support and maintenance as
determined by a standard substantially similar to the Support Provision of the
Marital Trust.[26]


!       At the time the trial court
granted Timothy and Lisa a divorce on January 26, 2006, Timothy had not
received any distributions of any part of the corpus of the Family Trust.

!       At no time during his marriage to
Lisa did Timothy have a present possessory right to any part of the corpus of
the Family Trust.

Under the unambiguous meaning of Section 15 and of Alice=s will, Timothy
acquired the Family Trust Income by devise or gift.  See Hilley v. Hilley,
342 S.W.2d 565, 569 (Tex. 1961) (stating a gift is a transfer of property made
voluntarily and gratuitously); Arnold, 273 S.W. at 801B03; Cleaver,
935 S.W.2d at 493 (concluding that wife=s acquisition of
income from testamentary trust was either by gift or devise);  McClelland,  37 S.W. at 358B59; Black=s Law Dictionary 483 (8th ed.
2004).  In addition, because Timothy had no present, possessory right to any
part of the Family Trust corpus, Timothy was not effectively an owner of the
trust corpus during his marriage to Lisa, and the Family Trust Income, as a
matter of law, was not community property.  See McClelland,  37 S.W. at 358B59. 

Therefore, the trial court reversibly
erred in characterizing the Family Trust Income as community property rather
than Timothy=s separate property and by awarding any part of this
property to Lisa.  See Eggemeyer, 554 S.W.2d at 142; Gana, 2007
WL 1191904, at *4.  This error requires a reversal and remand to the trial
court.








                                               IV. 
Conclusion

Under the plain meaning of Section 15 and of the applicable
sections of the Family Code, we conclude that, in the context of income
distributions under an irrevocable trust during marriage, these distributions
are community property only if the recipient has a present possessory right to
part of the corpus, even if the recipient has chosen not to exercise that
right.  Under these circumstances, the recipient=s possessory right
to access the corpus means that the recipient is effectively an owner of the
trust corpus.  Under this standard, the trial court erred in characterizing the
Marital Trust Income and the Family Trust Income as community property, and
Timothy acquired this property by devise or gift rather than by the receipt of
income on property he owned.  The trial court erred by awarding Lisa any part
of this income, the principal amount of which totals $2,305,018.  Although we
affirm the trial court=s grant of divorce and dissolution of the
marriage, based on the trial court=s reversible error
in mischaracterizing the Marital Trust Income and the Family Trust Income, we
sever the remainder of the judgment and reverse and remand for further
proceedings in conformity with this opinion.[27]

 

/s/      Kem Thompson Frost

Justice

Panel
consists of Chief Justice Hedges and Justices Frost and Guzman. (Hedges, C.J., concurring).









[1]  The record in this case is voluminous and contains
evidence regarding many matters; however, we mention only the facts relevant to
the disposition of this appeal.





[2]  The trial court rejected Lisa=s assertion of a prior common-law marriage, and no
party has challenged this finding on appeal.





[3]  At the time of the sale, the foundation was known as
the Alice and Timothy Sharma Foundation. 





[4]  Timothy testified that he donated the income from
the trusts to the Cambridge Foundation, and the record contains no evidence
that trust income was deposited in any of Timothy=s bank accounts. 





[5]  Evidence at trial, however, showed that, during the
twenty months following the funding of the Marital Trust and the Family Trust,
neither of these trusts had its own bank account.  During this period the
principal portions of payments on the Notes were deposited into one of Timothy=s community property bank accounts by staff hired to
assist him.  There was testimony that this was done in error because Timothy
and his advisors lacked experience in operating trusts, given that Timothy had
never before been a trustee.  Eventually, a reconciliation was performed by
professional staff, and separate accounts were established for both of the
trusts.  There is no evidence that Timothy, as trustee, ever declared or
determined that he was entitled to receive distributions of corpus from the
Marital Trust or the Family Trust. The trial court did not find that the depositing
of this principal into Timothy=s personal bank
account constituted distributions of corpus to Timothy.  Based in part on the
depositing of part of the trust corpus into Timothy=s personal bank account, Lisa sought leave to file a
trial amendment asserting that the Marital Trust and the Family Trust should be
disregarded because Timothy allegedly had engaged in a pattern of dealing with
the trust property as if he owned the property, such that the trusts are
Timothy=s alter egos. The trial court denied Lisa leave to
file this trial amendment.  Lisa has not challenged this ruling on appeal.
There is no evidence that Timothy received distributions of corpus from the
Marital Trust or the Family Trust. 





[6]  Timothy=s
opening appellate brief contains no argument, analysis, or citations to the
record and legal authorities regarding any assertion that the trial court erred
in dividing the trust income in question because it was no longer part of the
parties= estate, given that Timothy had donated this income
back to the maker of the Notes.  See Tex.
R. App. P. 38.1(i); San Saba Energy, L.P. v. Crawford, 171 S.W.3d
323, 337 (Tex. App.CHouston [14th Dist.] 2005, no pet.).  





[7]  Lisa agrees that this action is required under Alice=s will. 





[8]  Courts also have held that, if a potential
beneficiary under a trust has no right to acquire corpus or accrued trust
income, then that corpus or income cannot possibly be the community property of
the potential beneficiary=s spouse.  See Lemke v. Lemke, 929 S.W.2d 662,
663B64 (Tex. App.CFort
Worth 1996, writ denied); In re Marriage of Burns, 573 S.W.2d 555, 556B67 (Tex. Civ. App.CTexarkana
1978, writ dism=d); Currie v. Currie, 518 S.W.2d 386, 389B90 (Tex. Civ. App.CSan
Antonio 1974, writ dism=d).  Conversely, if a spouse has a present possessory
right to trust corpus or income but the spouse elects not to receive it, then
courts have treated the spouse as having acquired title to the corpus or income
as separate property, with any future income from that property during marriage
being community property.  See Cleaver v. Cleaver, 935 S.W.2d 491, 492B94 (Tex. App.CTyler
1996, no pet.) (holding that, because wife had present possessory right to
undistributed income from trust, she would be treated as having acquired that 
income as her separate property and income on the undistributed income was
community property); In re Marriage of Long, 542 S.W.2d 712, 717B18 (Tex. Civ. App.CTexarkana
1976, no writ) (holding that, because husband had present possessory right to
half of trust corpus, that half of the corpus would be treated as the husband=s separate property and the accrued income on that
half of the corpus would be treated as community property, even though husband
had decided to leave that half of the corpus in the trust).    





[9]  Although no case supports this rule, parts of Lisa=s argument suggest it.  





[10]  See McClelland v. McClelland, 37 S.W. 350,
358B59 (Tex. Civ. App. 1896, writ ref=d). 





[11]  The Cleaver court addresses this rule.  See
Cleaver, 935 S.W.2d at 492B94.





[12]  The Arnold case does not address this issue. See
Arnold, 273 S.W. at 801B05.  Timothy
cites Hutchison v. Mitchell, 39 Tex. 487 (1873) (holding that income
from trust received by wife was her separate property in situation in which
wife was income beneficiary). The Hutchison case was decided by the
so-called ASemicolon Court@
that sat from 1870-73, during the end of the Reconstruction Era.  James R.
Norvell, Oran M. Roberts and the Semicolon Court, 377 Tex. L. Rev. 279, 279B87 (1959).  Lisa asserts that cases from this court
have no precedential value, citing Peck v. City of San Antonio, 51 Tex.
490, 1879 WL 7699 (1879).  However, the Peck court held that decisions
from the so-called AMilitary Court@
(the Supreme Court of Texas from 1867 to 1869, the members of which were
appointed without constitutional basis by military authorities under
Congressional Reconstruction) have no precedential value, while decisions from
the Semicolon Court do have precedential value because that court had authority
under the Texas Constitution of 1869.  See Peck, 51 Tex. at 492B93, 1879 WL 7699, at *1B2; see also Norvell, 377 Tex.
L. Rev. at 287B96.  In any event, though the Hutchison case is
inconsistent with Rule A, it does not affirmatively address which rule
applies.  Therefore, the Hutchison case does not aid this court in
determining the legal rule in this case. 

 





[13]  Lisa cites Buckler v. Buckler, for the
proposition that the Supreme Court of Texas overruled this part of the
McClelland holding in the Arnold case.  See 424 S.W.2d 514,
516 (Tex. Civ. App.CFort Worth 1967, writ dism=d).  Though the Buckler court quoted the Buckler
appellant=s argument that Arnold overruled this part of McClelland,
the Buckler court held that Arnold did not overrule this part of McClelland. 
See id.  In any event, a review of the Arnold case shows that the
Arnold court did not overrule any part of McClelland relevant to
the analysis in the case at hand.  See Arnold, 273 S.W. at 801B05.  





[14]  The court of appeals in Shepflin v. Small
concluded that trust income was a spouse=s
separate property; however, in the opinion the court did not detail the rights
of the spouse, if any, to access the corpus of the trust, so that case is not
helpful to the inquiry at hand.  See 23 S.W. 432, 432B33 (Tex. Civ. App. 1893, no writ).





[15]  Lisa cites obiter dicta from a case involving the
characterization of income generated by patents.  See Alsenz v. Alsenz,
101 S.W.3d 648, 653 (Tex. App.CHouston [1st
Dist.] 2003, pet. denied).  The general obiter dicta statements in Alsenz
are not on point in answering the issues in this appeal.  See id. at
653.





[16]  By adopting precise standards, courts promote
consistency, uniformity, fairness, and predictability in our jurisprudence. See
J. Thomas Oldham, Tracing, Commingling, and Transmutation, 23 Fam. L.Q. 219, 250 (1989) (noting that
legal rules clearly distinguishing community property from separate property
increase predictability and uniformity). 





[17]  Lisa asserts that the record contains disputed
evidence as to whether Timothy or the Timothy and Alice Sharma Foundation is
entitled to the remainder of the Marital Trust, in light of an unaudited
statement of Timothy=s financial condition and testimony of Deo Shanker,
who prepared the statement.  However, as a matter of law, this parol evidence
cannot be used to create an ambiguity or vary the terms of Alice=s unambiguous will.  See Universal C.I.T. Credit
Corp v. Daniel, 243 S.W.2d 154, 157 (Tex. 1951) (holding that Texas courts
must enforce an unambiguous written instrument as written and parol evidence
will not be received for the purpose of creating an ambiguity or varying the
meaning of the instrument); Fein v. R.P.H., Inc., 68 S.W.3d 260, 265B66 (Tex. App.CHouston
[14th Dist.] 2002, pet. denied) (same); see also Appling v. Jay,
390 S.W.2d 799, 803 (Tex. Civ. App.CTexarkana
1965, writ ref=d n.r.e.) (rejecting effort by one party interested in
a trust to modify a term of the trust by unilateral interpretation of the trust
instrument that clashes with its specific language).  Therefore, any conflict
or dispute created by this parol evidence is of no moment, and, under the
unambiguous language of the will, the Timothy and Alice Sharma Foundation is
the sole remainder beneficiary of the Marital Trust. 





[18]  Lisa asserts that Timothy could not possibly have
acquired the trust income by devise because Timothy acquired it during marriage
and after Alice=s death.  Lisa cites no case in this regard; however,
all devises occur after the death of the person making the devise.  In
addition, the passage of time following Alice=s death does not change the fact that the only reason that trust income
was distributed to Timothy was because of the commands of Alice in her will.  See
McClelland,  37 S.W. at 358B59 (stating
that monthly  income distribution was acquired by devise).  In any event,
Timothy=s acquisition of the Marital Trust Income also
satisfies the essential elements of a gift.  See  Hilley v. Hilley,
342 S.W.2d 565, 569 (Tex. 1961) (stating a gift is a transfer of property made
voluntarily and gratuitously); Cleaver, 935 S.W.2d at 493 (concluding
that wife=s acquisition of income from testamentary trust was
either by gift or devise).  Because Timothy acquired the income in question by
devise or gift during marriage, this court=s
holding is based on the plain meaning of the definition of separate property in
the Texas Constitution.  This court does not go beyond the definition of
separate property in the Texas Constitution.  





[19]  Lisa cites an obiter dictum from the Ridgell
case that the beneficiaries of a valid trust are the owners of the equitable
title to the trust property and are considered the Areal owners.@  See
Ridgell, 960 S.W.2d at 147.  Though the court, in making this general
statement, does correctly contrast the bare legal title held by the trustee
with the equitable title of beneficiaries, it does not distinguish between
remainder beneficiaries and income beneficiaries who do not have a present
possessory interest in the trust corpus.  We conclude that this distinction is
significant in the marital-property characterization under Section 15 and the Arnold
case.  In addition, as discussed above, the Ridgell court=s marital-property-characterization analysis supports
Rule C.  See id. at 147B50.  





[20]  Lisa also relies on Mercantile National Bank at
Dallas v. Wilson, 279 S.W.2d 650, 651B54
(Tex. Civ. App.CDallas 1955, writ ref=d n.r.e.).  However, that case is not on point.  Because the trust in Wilson
was an inter vivos trust, there was no possibility of a devise.  See
Wilson, 279 S.W.2d at 651B54. 
Furthermore, because the wife was the sole settlor and sole beneficiary of the
trust, there was no possibility that she could receive a gift, because she
could not make a gift to herself. 





[21]  As noted above, Lisa requested leave to file a trial
amendment pleading alter ego, but the trial court denied leave.  Lisa has not
challenged that ruling in this appeal. Thus, there are no pleadings to support
any alter ego theory.  





[22]  Lisa asserts that Timothy=s trial counsel agreed in his opening statement that
the trust corpus is Timothy=s separate
property.  However, in the cited passage, Timothy=s counsel first stated that there would be evidence that Timothy=s permanent possessory interest in the trust is only
in the interest income, not in the corpus.  Counsel then stated that the trust
itself owns the corpus and that Lisa is trying to obtain Amonies that were generated from that trust, which is
[Timothy=s] separate property.@ In context, it is apparent that the latter clause modifies Amonies@ rather than Atrust@ and that
Timothy=s counsel was saying that the trust income was Timothy=s separate property.  Timothy=s counsel had just asserted that Timothy did not have
a possessory interest in the trust corpus.  In addition, in a subsequent
discussion between trial counsel and the trial court regarding Timothy=s alleged failure to produce documents in response to
Lisa=s discovery requests, Timothy=s counsel first asserted that the trust owned the
trust corpus such that the corpus was not Timothy=s separate property.  Lisa=s
counsel then stated that Timothy claimed the Marital Trust Income was his
separate property.  Timothy=s counsel then
made a statement indicating that the Marital Trust Income is community
property.  In any event, the statements of Timothy=s trial counsel in these two instances certainly were
not a clear, deliberate, and unequivocal statement that the trust corpus is
Timothy=s separate property or that the trust income is
community property.  Therefore, these statements of counsel do not constitute
judicial admissions.  See Regency Advantage Ltd. P'ship v. Bingo
Idea-Watauga, Inc., 936 S.W.2d 275, 278 (Tex. 1996) (holding that statement
was not clear, deliberate, and unequivocal so as to constitute a judicial
admission).





[23]  Though Timothy raises numerous issues and arguments
on appeal, including the Aconstructive receipt@ argument, he also asserts that the Marital Trust Income and the Family
Trust Income are his separate property because he acquired them by devise or gift. 
Timothy conditions his Aconstructive receipt@ argument and his fifth issue on this court=s determining that the trial court correctly
characterized the Marital Trust Income and the Family Trust Income as community
property.  Because the trial court did not correctly characterize the income,
this court does not address Timothy=s Aconstructive receipt@ argument and his fifth issue.  Timothy=s Aconstructive receipt@ argument has nothing to do with the depositing of trust corpus into
Timothy=s personal bank account by Timothy=s staff in error.  Rather, in the Aconstructive receipt@ argument, Timothy asserts that, because he donated distributions of
trust income to the Cambridge Foundation without taking actual receipt of any
money, Timothy never acquired this income and therefore this income is not
separate or community property. 





[24]  See supra, note 5.





[25]  Lisa suggests that the evidence is unclear as to
whether there are beneficiaries of the Family Trust other than Timothy based on
an unaudited statement of Timothy=s
financial condition stating that Timothy is the sole beneficiary of the Family
Trust.  Lisa also cites testimony from a witness who stated that Timothy is the
sole beneficiary of the Family Trust and that there is no remainder beneficiary
under Athat will.@
However, as previously noted, a financial statement prepared at Timothy=s request and the legal opinion of a nonlawyer
witness, as a matter of law, cannot change the terms of Alice=s will.  See Appling, 390 S.W.2d at 803.





[26]  The issue of whether, under the Support Provision of
the Family Trust, it was in fact necessary to distribute the Family Trust
Income to Timothy is not before us, and we do not address this issue.





[27]  Because we have granted this relief, we need not and
do not address the other issues Timothy raises on appeal.